# ELLA G. SMOOT, Appellant, v. G. S. JUDD et al.

### In Banc, November 29, 1904.

1. **ELECTION OF REMEDIES: Bar: False Sheriff's Return: Suit on Bond.** A suit on the bond of the sheriff for damages for a false return under which judgment by default was obtained against an unserved landowner, although resulting only in nominal damages, is a bar to a subsequent suit in equity by said landowner to quash the execution and to set aside a sale and sheriff's deed to the land made in pursuance to such default judgment. Even if such landowner were entitled to both remedies, an election to take the one will preclude thereafter the right to take the other.

   *Held*, by **Valliant, J.**, dissenting, that the remedies are not inconsistent, and that by bringing suit on the sheriff's bond, and failing to recover anything but nominal damages, the unserved landowner did not thereby waive the wrong and elect to treat the judgment by default and the subsequent sale thereunder to non-innocent purchasers as a transfer of his property.

2. **FALSE RETURN: Judgment by Default: Remedy.** Where the sheriff's return recites a personal service of process upon the defendant, which recital is false, the remedy of the unserved defendant against whom judgment by default has been rendered, in the absence of fraud on the part of the plaintiff in the suit, is a suit on the sheriff's bond for damages for the false return, and not by a suit to set aside the sale and the sheriff's deed conveying the defendant's land made in pursuance of such default judgment. The return of the sheriff showing service of summons on the defendant in the manner prescribed by the statute, although false, is conclusive upon the parties to the suit, and is not subject to attack in the case in which made, either before or after judgment. Overruling Smoot v. Judd, 161 Mo. 673. **Valliant, J., dissenting.**)

3. ———: ———: ———: **Equity.** The officer's return of a summons served according to the statute is conclusive upon the parties to the suit, and a judgment by default in pursuance thereof can not be attacked even in equity except where the plaintiff in the judgment aided or abetted the false return, and not even then if the property as a result of a sale under such judgment has passed into the hands of innocent purchasers. To permit a judgment to be overthrown by an equity court in such case, would be to impair the force and validity of judg-

ments of courts of law, and to subject titles acquired by judicial sales to the greatest uncertainty.

*Held,* by **Valliant, J.,** in a dissenting opinion, that the judgment may be impeached in equity by the defendant showing that the sheriff's return is false, and that defendant had no notice of the suit, and that he had a meritorious defense. *Held,* also, that to deny to an injured defendant the right to impeach the judgment obtained by a false return without service of process upon him, where the right of no innocent purchaser intervenes, would be the same as taking his property without due process of law, and, therefore, to deny him a constitutional right.

*Held,* by **Fox, J.,** in a separate concurring opinion, in which **Gantt, J.,** concurs, that where the officer makes a false return, and the party plaintiff has knowledge of it, or in any way participates in the fraud, a court of equity, wherever the rights of innocent parties have not intervened, will assume jurisdiction and afford relief, for the reason that that would be deemed fraud in the concoction of the judgment. But where no such fraud is shown the return of the officer, if it shows a service in the manner prescribed by statute, is conclusive, and the remedy of the party injured thereby is by suit upon the officer's bond for damages for a false return. *Held,* also, that a court of equity should not assume jurisdiction to set the judgment of the law court aside on a mere showing that the officer's return was false and the injured party had a meritorious defense.

4. ———: ———: ———: ———: **Innocent Purchaser: Plaintiff in suit.** A plaintiff who neither aids nor abets the sheriff's false return which shows personal service on the defendant, even though a purchaser at a subsequent sale under execution upon the default judgment, is as much an innocent purchaser as would be a third party without notice. Unless the plaintiff was a party to the false return, or knew of it and so knowing took advantage of it, and hence was guilty of a fraud in the concoction of the judgment, he has the same right to rely on the conclusiveness of the return and the integrity of the judgment based thereon, as other persons.

*Held,* by **Valliant, J.,** dissenting, that, although the plaintiff may have in no sense been a party to the false return prior to the judgment under which he subsequently purchased, a court of equity should not refuse to set aside the judgment on that account, if he loses nothing thereby, but is simply placed where he was before the judgment was rendered; and if, after judgment rendered, he learns that the return was false and that the unserved defendant was for want of notice deprived of an opportunity to make

his defense, and holds on to his judgment and seeks to enforce it, he is amenable to the charge of fraud.

5. ———: **Amendment: Conclusiveness.** The sheriff was permitted to amend his return, which recited a personal service on the defendant in that action, so as to show that the writ was served on her by leaving a copy with her husband, etc. *Held*, that the amended return related back to the time of the original return, and whether regard be had to the original or amended return, the service was conclusive upon the parties to the suit, and cannot be contradicted in an action to set aside a sale of property under execution issued upon a judgment by default in that action, nor can it be contradicted in any other action except in a direct suit against the sheriff for false return.

*Held*, by Valliant, J., that neither the amended return, nor the original return, if false in fact, is beyond the reach of a court of equity which has power, in either case, to set aside the judgment based thereon. *Held*, also, that the ruling of the court in allowing the sheriff to make the amendment can not give it the character of *res adjudicata*.

6. ———: **Married Woman: Note Made in 1887: Judgment by Default: Meritorious Defense.** A judgment by default in an action begun in 1891 against a married woman, who was not served with process, upon a note made in 1887, can not be set aside on the ground that when the note was made she was incompetent to contract. Under the Married Woman's Act of 1889 she could have pleaded her coverture as a defense to the action, but the fact of coverture and a failure to plead it does not render a judgment against her entered since the Married Woman's Act went into effect invalid or void, nor subject it to collateral attack. It, like other judgments, could not be attacked for an omitted defense, but only directly for fraud in the very act of procuring it.

*Held*, by Valliant, J., that the fact that she was a married woman when she signed the note as surety for her husband's debt would have been a "meritorious defense" to that action, and is sufficient ground to justify an equity court to permit her to show that the sheriff's return showing personal service on her was false, and on such a showing to set aside the default judgment based thereon.

7. ———: ———: ———: **Pleading.** The holder of a note signed by a married woman in 1887, was not bound in his suit on the note to state in his petition that she was a married woman, nor can the charge, in a suit to set aside a sale and a sheriff's deed to the property made under execution upon a judgment by default against her, that "that omission is a fact which conspired with other facts to deprive her of her defense without any neglect on her part," be allowed, unless the plaintiff fraudulently prevented her from making the defense of coverture.

Appeal from Barton Circuit Court.—*Hon. W. W. Graves*, Judge.

AFFIRMED.

*Willis H. Leavitt* and *A. S. Marley* for appellant.

(1) The law questions involved in the merits of this case were settled on the former appeal (161 Mo. 673). Conroy v. Iron Works, 75 Mo. 641; Band v. Taylor, 62 Mo. 338; Overall v. Ellis, 38 Mo. 209; Hombs v. Corbin, 34 Mo. App. 397. (2) The pivotal question is one of fact as to whether Ella G. Smoot was served with process so as to be charged with knowledge of the suit when pending.

*Thurman, Wray & Timmonds* for respondents.

(1) The defendants' answer is not a plea of "confession and avoidance." The allegation in the petition is that the sheriff's return was false in this, that there was in fact no service whatever of summons on Ella G. Smoot. A general denial would have put in issue the question as to whether or not there was in fact service of the summons on Ella G. Smoot. The plea of "confession and avoidance" which places the burden of proof on defendants admits the existence of plaintiff's cause of action. Bliss on Code Pleading, secs. 240, 241; Ledbetter v. Ledbetter, 88 Mo. 60; State to use v. Williams, 48 Mo. 210; State ex rel. v. Rau, 93 Mo. 130; Cavender v. Waddingham, 2 Mo. App. 555; Sprague v. Rooney, 104 Mo. 360; Hurt v. Ford, 142 Mo. 301. The sheriff who served the original process had the unquestioned right to amend the return, so as to conform to the facts, under the sanction of the court rendering the judgment in the case of Judd v. Smoot. R. S. 1889, secs. 670, 672; Blaisdell v. Steamboat, 19 Mo. 158; Groner v. Smith, 49 Mo. 323; McClure v. Wells, 46 Mo. 314; Scruggs v. Scruggs, 46 Mo. 273;

Bank v. Grewe, 84 Mo. 479; Dunham v. Wilfong, 69 Mo. 358; Feurt v. Caster, 174 Mo. 298. When the return of an officer is amended in the manner provided by law, it relates back to and has the same force and effect as if originally so made; in other words, it becomes the return. Webster v. Blount, 39 Mo. 500; Kitchen v. Reinsky, 42 Mo. 439. (2) Witness Samuel N. Smoot, plaintiff's husband, does not stand on an equality with the sheriff in law. His official position, oath, and bond, places his testimony with reference to his official duties above that of a private citizen. When the circuit clerk delivered to him the writ of summons with the copies and copy of the petition, it became his official duty to serve that writ in one of the ways provided by law. The law presumes that every public officer performs his duty. Leonard v. Sparks, 117 Mo. 117; McCallister v. Ross, 155 Mo. 94. (3) (a) A false return is one in which a sheriff, or other ministerial officer, states a fact contrary to the truth which is injurious to one of the parties, or some one interested in it. 1 Bouv. D. L., 573. (b) The amended return is not inconsistent with the original. Service at the time and place is the ultimate fact which gives the court jurisdiction of the person, and it is immaterial whether such service is had by leaving a copy, etc., or by delivering the copy to the person served. Knoll v. Woelken, 13 Mo. App. 275. (c) All the authorities agree that the sheriff's return to a summons is at least prima facie evidence of the facts therein recited with reference to the execution of such writ. Burgert v. Borcher, 59 Mo. 86; State ex rel. v. Devitt, 107 Mo. 576. (4) If a party, in a legal way, fairly acquires a legal right, a court of equity will not disturb it, although such a right gives an advantage to the party obtaining it. McCourtney v. Sloan, 15 Mo. 95. It is admissible to bring forward, by amendment, matters in a proceeding at law for the purpose of reinforcing a defense in equity, after equity proceedings are instituted, for the purpose of effecting the subject

of the action at law. Nave v. Adams, 107 Mo. 421. Equity sometimes relieves one of his unfortunate blunder, but it never aids another to take an unfair advantage of him. Hayden v. Luffenburger, 157 Mo. 95.

MARSHALL, J.—This is a bill in equity to set aside a judgment of the circuit court of Barton county rendered on September 18, 1891, in favor of G. S. Judd and against Ella G. Smoot and Samuel N. Smoot, and the execution issued thereunder, and the sheriff's deed to certain land in that county made to said Judd as purchaser at such execution sale, and also to set aside a decree in partition, rendered on September 3, 1894, in a certain suit wherein said Judd was the plaintiff and Lewis Gordon et al. were the defendants, and also to set aside the sheriff's deeds in partition to the defendants Amos Brand and William Jackson, the purchasers of said land at the partition sale, and to recover of said Judd, Brand and Jackson the rents and profits of said land since September 29, 1894, and to declare the plaintiff entitled to an undivided one-fourth interest in the land. There was a decree for the defendants in the trial court, and the plaintiff appealed.

Compressed into as small a space as possible the facts underlying the controversy are these:

Ella G. Smoot and Samuel N. Smoot are and at all times hereinafter mentioned were husband and wife. Mrs. Smoot owned lots 4, 5 and 6, in Jasper, Missouri, but it does not appear whether it was her separate estate or only a legal estate. Being such owner, she and her husband, on April 15, 1887, executed and delivered to G. S. Judd their promissory note for $683.61, payable one day after date, with eight per cent interest, which recited to be for value received "for money this day borrowed of him, and to secure the payment of which, a mortgage is this day executed on lots 4, 5 and 6, in Jasper, Missouri." Thereafter at some time

Vol 184 mo—33

not disclosed by the record, at the request of the Smoots, Judd released the mortgage. The debt was not paid, and on July 28, 1891, the debt being then over four years past due, Judd instituted suit in the Barton Circuit Court against Mr. and Mrs. Smoot. The petition did not describe the defendants as husband and wife. A summons was regularly issued, and was returned by the sheriff as having been served personally upon both Mr. and Mrs. Smoot. Mr. Smoot took the papers to Mr. John B. Cole, an attorney of the bar of that court, and directed him to look after the matter, saying, however, he did not want to run up any expense in the case, but only wanted to get time in which to pay the debt. The attorney was under the impression that he was to represent both Mr. and Mrs. Smoot in the matter, but the record does not afford any competent evidence that Mrs. Smoot authorized her husband to act for her in employing the attorney. The case was allowed to go by default, and on September 18, 1891, a personal judgment was rendered against Mr. and Mrs. Smoot, for $925.13. On the 3d of February, 1891, Mrs. Smoot's brother, Peter A. Gordon, died leaving certain land in Barton county, and Mrs. Smoot inherited an undivided one-fourth interest therein. On January 20, 1892, an execution was issued on said judgment and was levied on Mrs. Smoot's interest in the land. Mrs. Smoot then went to see the attorney, Mr. Cole, who had been previously employed by her husband, and asked him to try to arrange the matter so that they could have six months in which to redeem the land after it was sold under execution. She also saw Mr. Judd's attorney, Mr. Wray, and asked him to give them such time to redeem. Accordingly, Mr. Cole entered into negotiations with Mr. Wray looking to such an arrangement, with the result that a written agreement was entered into giving the Smoots twelve, instead of six, months, in which to redeem the land after it should be sold under execution. The land was then sold on

March 10, 1892, and Judd became the purchaser of Mrs. Smoot's interest therein for $510, and received a sheriff's deed therefor.

Thus the matter stood until October 30, 1893, when, the time for redemption having expired and the Smoots having done nothing, Judd instituted a suit for the partition of the land. On February 23, 1894, she filed an answer in the said case, which recited that it was filed by leave, in which she denied that she had ever conveyed her interest in the land to Judd or authorized any one to do so for her, but she did not refer to or call in question in any way the validity of the judgment of Judd against herself and her husband. On motion the court struck out the answer, and she took no further steps in the case. On April 14, 1894, a decree in partition was rendered and on September 3, 1894, the land was sold under that decree, and the defendants Brand and Jackson became the purchasers and received the sheriff's deeds therefor, entered into possession and have remained in possession ever since. It is conceded that at some time, the date is not disclosed by the record, Mrs. Smoot sued the sheriff on his official bond, for $3,000 damages, for the loss of her land, by the sale under said personal judgment, alleging that his return upon the summons that he had served it upon her personally was false, and that upon a trial of that case she recovered a judgment for nominal damages.

On August 18, 1895, Mrs. Smoot instituted this suit in equity. The petition alleges nearly all the facts hereinbefore set out, and predicates a right to recover upon the falsity of the sheriff's return aforesaid. The action was brought agaist Judd, Brand, Jackson and Mr. Smoot. Judd and Smoot, though personally served, made default, and the action is defended by Brand and Jackson, the purchasers of the property at the partition sale. The case was tried in the circuit court and resulted in a decree for the defendants. The plaintiff appealed to this court where the judgment was reversed and the

cause remanded on March 29, 1901. [Smoot v. Judd, 161 Mo. 673.] This court held that the circuit court erred in finding the fact to be that the sheriff's return was not false, but remanded the case for retrial, with leave to the defendants to amend their answer so as to show that though the return was false in showing that Mrs. Smoot had been served personally, still Mrs. Smoot had in fact been served, by a copy of the summons having been left with her husband, a member of her family, at their usual place of abode.

On May 7, 1901, the sheriff filed a motion, in the original case of Judd v. Smoot, asking leave to amend his return on the summons so as to conform to the facts, and so as to show a service by copy as aforesaid, instead of personally. Mrs. Smoot was notified and appeared and contested the motion. The court granted the ex-sheriff leave to amend, and Mrs. Smoot appealed to the Kansas City Court of Appeals, where the judgment was affirmed. [Judd v. Smoot, 93 Mo. App. 291.]

Thereafter at the September term, 1902, the defendants filed an amended answer, in which the various matters herein referred to are set out, including the judgment allowing the return to be amended, and averring that Mrs. Smoot was served by copy as aforesaid instead of personally. The reply is a general denial. The case was then tried upon the issues thus joined. The ex-sheriff testified that Mr. and Mrs. Smoot resided at that time at the Commercial Hotel, in Lamar, and that when he went to serve the summons on them, he found Mr. Smoot and served the writ and copy of the petition on him; and when he asked to see Mrs. Smoot, he was told by Mr. Smoot that she was sick and he could not see her, but Mr. Smoot told him to leave the copy with him and to return it as personally served on Mrs. Smoot, and that he did so, "like a chump." Mr. Smoot testified that the sheriff served only one summons, composed of a single sheet, on him, and that it was served on the west side of the square in front of

Van Pelt's drugstore and not at the hotel, and that the sheriff did not leave anything with him for his wife, and he denied the sheriff's statements as to what occurred when he served the summons, but admitted that his wife was sick. The other facts set out in the pleadings and herein stated were admitted or proved beyond question. The circuit court entered a decree for the defendants and the plaintiff again appeals.

## I.

At some time, not definitely stated, the plaintiff sued the sheriff for damages for false return, and recovered a judgment. If that action was instituted before this suit was begun, it would clearly be a bar to this suit, for even if it should be conceded that the plaintiff was entitled to both remedies, the election to take one, would preclude a right thereafter to pursue the other. [Nanson v. Jacob, 93 Mo. l. c. 345; Nalle v. Thompson, 173 Mo. l. c. 616.] In any event, without regard to which action was begun first, it now appears that the plaintiff prosecuted her suit against the sheriff to a final and successful result. This being true, whatever wrong or loss she suffered in consequence of the alleged false return of the sheriff, has been compensated for, and she has obtained satisfaction therefor. So that even if it could be conceded that her remedy was double, her wrong and loss was single and she could have only one satisfaction, and having received that in the other action, she is no longer entitled to pursue this remedy. [Rivers v. Blom, 163 Mo. l. c. 448; Bank v. Bank, 130 Mo. l. c. 168.]

But, as hereinafter pointed out, I am of opinion that her remedy was confined to an action on the sheriff's bond, for false return, and that she can not maintain a suit in equity to set aside the judgment or its consequences, because of the falsity of the sheriff's return showing personal service on her.

## II.

When the case was here on former appeal, it was held that while the adjudications in this State had held that a sheriff's return is conclusive, except in an action against the sheriff for a false return, still in some other jurisdictions, a bill in equity would lie to set aside a judgment, by default, based upon a false return of the sheriff showing service of the summons upon the defendant, and accordingly it was then held that the return of the sheriff was not conclusive, and that this action would lie. [Smoot v. Judd, 161 Mo. 673.]

With the greatest respect for the learned judge who wrote that opinion and for the equally learned judges who concurred in it, I am constrained to say, I think it does not announce the true rule of law in this State, and that it should be overruled.

Ever since the decision of this court in Hallowell v. Page, 24 Mo. 590, the law has been uniformly declared in this State to be that "the return of a sheriff on process, regular on its face, and showing the fact and mode of service, is conclusive upon the parties to the suit. Its truth can be controverted only in a direct action against the sheriff for false return." [Heath v. Railroad, 83 Mo. 617; Decker v. Armstrong, 87 Mo. 316; Phillips v. Evans, 64 Mo. l. c. 23; State ex rel. v. Finn, 100 Mo. 429; Delinger's Admr. v. Higgins, 26 Mo. l. c. 183; McDonald v. Leewright, 31 Mo. 29; Reeves v. Reeves, 33 Mo. 28; Stewart v. Stringer, 41 Mo. l. c. 404; Jeffries v. Wright, 51 Mo. 215; Magrew v. Foster, 54 Mo. 258; Anthony to use, etc., v. Bartholow, 69 Mo. l. c. 194; Bank v. Suman, 79 Mo. l. c. 532 (in this case it was held that parol evidence was inadmissible in aid or support of the return, to show service in fact though not in the manner set out in the return, and was admissible against the return only in a suit against the sheriff for a false return); Bank to use v. Gilpin, 105 Mo. l. c. 23; Feurt v. Caster, 174 Mo. l. c. 297.]

In Stewart v. Stringer, 41 Mo. l. c. 404, WAGNER, J., said: "The courts of some of the States have held that a sheriff's return is merely prima facie evidence of the facts therein stated; but the law is firmly settled in this State that a defendant can not controvert the truth of the sheriff's return. If the return of a sheriff to a process is regular on its face, it is conclusive upon the parties to the suit, and the remedy for the party injured is an action against the sheriff for a false return."

But it is said that, in all the cases cited, the attack upon the sheriff's return was made in the original case, either before or after judgment and that while it was held that the sheriff's return was conclusive upon the parties in the original case, it was not held that such a return could not be attacked by a direct proceeding in equity, and upon former appeal it was pointed out that in Alabama, Tennessee, Kansas, Arkansas, Connecticut, Colorado and Illinois, it is held that a false return of the sheriff can be attacked and set aside by a direct proceeding in equity. Accordingly it was held upon former appeal of this case that the alleged false return of the sheriff in the original case of Judd v. Smoot could be attacked and set aside in this suit in equity.

This raises the question whether or not a return of a sheriff can be attacked and, if found to be false, a judgment at law by default founded thereon can be set aside in a direct proceeding in equity.

Gwynne on Sheriffs, page 473, thus states the law: "It is a well-settled principle of the English law, that the sheriff's return is not traversable, and the court will not try on affidavits, whether the return of a sheriff to a writ is false, even though a strong case is made out, showing fraud and collusion, but the party must resort to his remedy by an action against the sheriff for a false return. In Connecticut, the return of the sheriff on mesne process is held to be only prima facie evidence, but even in that State, he can not falsify it by his own evidence. In most, and probably in all of the

other States in the United States, the rule is established, that as between parties to the suit, in which the return is made, and privies, and the officer, except when the latter is charged in a direct proceeding against him for a false return, the sheriff's return is conclusive and can not be impeached. A party or privy may not aver the falsity of a return made by a proper officer, without a direct proceeding against the officer, even in chancery.''

Walker v. Robbins, 14 How. (U. S.) 584, was an injunction to restrain the enforcement of a judgment, based upon a marshal's return of personal service, and which the deputy marshal who served the process testified was false. The Supreme Court of the United States, speaking through Mr. Justice CATRON, said: ''Assuming the fact to be that Walker was not served with process, and that the marshal's return is false, can the bill, in this event, be maintained? The respondents did no act that connects them with the false return; it was the sole act of the marshal, through his deputy, for which he was responsible to the complainant, Walker, for any damages that were sustained by him in consequence of the false return. This is free from controversy; still the marshal's responsibility does not settle the question made by the bill, which is, in general terms, whether a court of equity has jurisdiction to regulate proceedings, and to afford relief at law, where there has been abuse, in the various details arising on execution of process, original, mesne and final. If a court of chancery can be called on to correct one abuse, so it may to correct another; and in effect, to vacate judgments, where the tribunal rendering the same would refuse relief, either on motion, or on a proceeding by *audita querela,* where this mode of redress is in use. In cases of false returns affecting the defendant, where the plaintiff at law is not in fault, redress can only be had in the court of law where the record was made, and if relief can not be had there,

the party injured must seek his relief against the marshal." Accordingly equitable relief was denied.

Knox Co. v. Harshman, 133 U. S. 152, was a bill in equity to restrain the enforcement of a judgment at law in favor of Harshman and against the county, on the ground that the bonds upon which the judgment rested were void, and upon the further ground that the return of the marshal, showing service of the summons on the county clerk, was false. The Supreme Court of the United States, speaking through Mr. Justice GRAY, said: "The officer's return stated that he served a copy of the summons upon the clerk. If that return were false, yet no fraud being charged or proved against the petitioner, redress could be sought at law only, and not by this bill. [Walker v. Robbins, 14 How. 584.]" Accordingly the judgment of the circuit court dismissing the bill was affirmed.

Stites v. Knapp, Ga. Dec. part II, p. 36, was a bill in equity to restrain a judgment at law, on the ground that the sheriff's return was false and that the defendant therein had not been served. It was held that if the return was false, the sheriff was liable on his bond, but that the truth or falsity of the return could not be inquired into in the equity case.

Baker v. Morgan, 2 Dow's Repts. 526, was a bill in equity to set aside a judgment in ejectment on the ground that the proceedings were irregular, in this, that the return upon the *habere* issued on the judgment was false in stating that the plaintiff in ejectment had been put into possession, and that the fact was that the mother of the plaintiffs had voluntarily given the plaintiff in ejectment possession, while they were minors. Lord REDESDALE said, "that equity might try whether a judgment was obtained by fraud, but he never heard of equity trying the proceedings at law for irregularity." Lord ELDON expressed the same view. Accordingly a decree by the circuit court in favor of the plaintiffs was reversed by the House of Lords.

Hunter v. Stoneburner, 92 Ill. 75, was a bill in equity to set aside a judgment in partition and a sale thereunder, on the ground that the plaintiff had not been served with process, and for other reasons. The sheriff's return was personal service. The plaintiff succeeded in the lower court and the defendants appealed. The Supreme Court of Illinois said: "It, then, appearing that appellee was served with process, he must be bound by the officer's return. It is in rare cases only that the return of the officer can be contradicted,.except in a direct proceeding by suit against the officer for false return. In all other cases, almost without exception, the return is held to be conclusive. An exception to the rule is where some other portion of the record in the same case contradicts the return, but it can not be done by evidence *dehors* the record." Accordingly the decree of the lower court was reversed.

Cully v. Shirk, 30 N. E. 882, was a bill in equity to set aside a judgment at law, on the ground that the sheriff's return was false. The Supreme Court of Indiana said: "This return was regular upon its face, and was such as to fully authorize the court to assume jurisdiction of the person of the defendant. The proceedings of the court subsequent to that time appear to be regular. There is no pretense that there was any fraudulent conduct on the part of the plaintiff or the officer in the service or return of the summons, or that the plaintiff was not a resident of the county. Such being the case, we are of the opinion that the return by the sheriff of the service of the process was binding and conclusive upon the parties to the suit, and that neither of them can as against the other, be permitted to dispute its verity." The court then added: "We have considered this case upon the ground assumed by the parties that the attack upon the judgment was direct, and not collateral. The converse of this rule seems to be established by the later cases, and the general rule laid down that any attack upon a judgment for want

of jurisdiction in the court to render it, predicated upon a matter *dehors* the record, is collateral.''

In Tullis v. Brawley, 3 Minn. l. c. 284, the Supreme Court of Minnesota said: ''It is a well-established general rule, that the return of a sheriff, so far as it is evidence of formal proceedings, is conclusive upon parties, privies, and prima facie upon strangers, and that it is not liable to impeachment, except in direct proceedings in which the officer is a party. Aside from the fact that the officer acts under oath, and that a party injured by any act or omission has an ample remedy against the sheriff and his sureties, by an action for a false return, such a rule seems necessary to give validity and effect to the acts of ministerial officers, and to protect purchasers at judicial sales, who are not supposed to have knowledge of, and of course ought not to be prejudiced by the misconduct or omissions of the officer. All that the law requires of them, is to ascertain whether the officer has a valid writ authorizing him to sell, issued upon a valid and subsisting judgment. Everything else is a matter entirely between the party injured and the sheriff and his sureties. Any other rule would deter purchasers and prevent property from selling at its real value.''

In Bolles v. Bowen, 45 N. H. 124, the Supreme Court said: ''As between the parties, the return of the sheriff is conclusive upon all matters material to be returned; and can not be contradicted by such parties or their privies, or by bail, endorsers, or others, whose rights or liabilities are dependent upon the suit. The remedy for a false return is by suit against the sheriff, and not by defeating the proceedings in which such return is made.''

Barrows v. National Rubber Co., 13 R. I. 48, was a bill in equity to set aside a sale under an execution on the ground, *inter alia,* that the return on the execution as to the notice of sale was false. The Supreme Court of Rhode Island said: ''In Angell v. Bowler, 3 R. I.

77, it was decided that an officer's return on an original writ can not be controverted by the defendant, except as provided by statute; and in Estes v. Cooke, 12 R. I. 6, it was decided that the return on an execution was conclusive on the parties in a subsequent action. In other States, with two or three exceptions, the rule is that the return is conclusive on parties and privies until set aside in some direct proceeding. [Swift v. Cobb, 10 Vt. 282; Bates v. Willard, 10 Met. 80; Campbell v. Webster, 15 Gray 28; Sykes v. Keating, 118 Mass. 517, 520; Bamford v. Melvin, 7 Me. 14; Huntress v. Tiney, 39 Me. 237; Messer v. Bailey, 31 N. H. 9; Herman on Executions, sec. 242.] The return is in fact part of the record, and while it stands is as conclusive as any part of it." Accordingly, relief was denied.

Stewart v. Stewart, 27 W. Va. 167, was a bill in equity to set aside a judgment at law, and the question arose on a motion for rehearing by a defendant who had made default that the sheriff's return was false. The relief was denied, the Supreme Court saying: "It seems hard, if the petitioner states the truth, that she can have no relief in this suit. But to give relief would be to contradict not only the return of the sheriff on the process issued in the cause, but also to contradict the judicial ascertainment that the defendant had been served with process, and that the bill was taken for confessed as to her. The statute did not contemplate a case like this. It speaks of rehearing, where the suit has been heard upon an order of publication, or when the summons has been served on the party outside of the State, and the statute positively requires that 'in such case the return must be made under oath and must show the time and place of such service, and that the defendant so served is a non-resident of this State.' It would be dangerous to permit the record to be contradicted in such a way. If the return had been made as required by the statute, no more difficulty

would be apparent, than if the cause was heard on an order of publication. But as it is, the defendant asks to be permitted to contradict the return of the sheriff upon the summons issued in the cause, and this, after the decrees are all entered upon the bill taken for confessed as to such defendant. It has been repeatedly held, that a defendant will not even in the same return or suit be permitted to contradict the return of a sheriff upon the summons issued in the cause. [Slayton v. Chester, 4 Mass. 478; Taylor v. Lewis, 2 J. J. Marsh. 400; Smith v. Hornback, 3 A. K. Marsh. 392; Tribble. v. Frame, 3 T. B. Mon. 51; Stinson v. Snow, 10 Me. 263; Bolles v. Bowen, 45 N. H. 124; Angell v. Bowler, 3 R. I. 77; State v. Clerk of Bergen, 1 Dutch. 209; Tullis v. Brawley, 3 Minn. 277; Egery & Hinckley v. Buchanan, 5 Cal. 53; Delinger's Admr. v. Higgins, 26 Mo. 180; Stewart v. Stringer, 41 Mo. 400; Tillman v. Davis, 28 Ga. 495.] In Bowyer v. Knapp, 15 W. Va. 291, it was decided, that the return of a sheriff upon a notice to take depositions could be contradicted. In Smith v. Hornback, supra, the court said: 'But as it appears from the sheriff's return that he delivered the possession to the plaintiff in virtue of the execution, parol evidence to show that possession was otherwise gained is inadmissible. For so high is the virtue of the sheriff's return regarded, that generally no averment can be admitted against it. [6 Com. Dig., tit. Return, G.] To this general rule there are indeed exceptions, as in an action upon the case, against the sheriff, for a false return, and some others of a like nature, in which the truth of the return is put directly in issue, in a proceeding instituted for the purpose of avoiding the consequences of a false return, or of being indemnified against such consequences, but we are aware of no case in which, like the present, where the question incidentally arises in a proceeding in the same case in which the return is made, it has been allowed to impeach its verity by evidence *dehors* the record.'

In Slayton v. Chester, 4 Mass. supra, PARSONS, C. J., said: 'It is very clear that where a writ appears by the return endorsed by the officer to have been legally served, the defendant cannot plead in abatement of the writ by alleging matter repugnant to the return; if the return be false, his remedy is by an action for a false return against the officer.' In Tillman v. Davis, 28 Ga. supra, LUMPKIN, J., in delivering the opinion of the court, said: 'But I will not multiply citations upon this point. I have investigated carefully in Brooke and Viner's Abridgements, and traced the question to its fountain-head, and find it well settled that by the common law no averment will lie against the sheriff's return, and one reason assigned amongst others is, that he is a sworn officer to whom the law gives credit. [Jenk. 143, pl. 98.]. . . . With a solitary exception (Watson v. Watson, 6 Conn. 334), 'there is an unbroken array of American cases in favor of the well-established English rule, that as between the parties to the process or their privies, the return of the sheriff is usually conclusive, and not liable to collateral impeachment, except for fraud or collusion; a rule so necessary to secure the rights of the parties, and to give validity and effect to the acts of ministerial officers, leaving the persons injured to their redress by an action for false return; and that this rule concluding the parties, applies to mesne process, by which the parties are brought into court.' In Watson v. Watson, 6 Conn. 334, it was held, that the return of an officer whether on mesne or final process is prima facie evidence only, and liable to be disproved. HOSMER, C. J., said: 'It is a general rule of the English common law that a sheriff's return of an execution, except in relation to himself when sued, is absolutely conclusive. [19 Vin. Abr., 196, 199; Com. Dig., tit. Return, G.] The reason assigned for not admitting an averment against the return of a sheriff is, that he is a sworn officer, to whom the law gives credit. [19 Vin. Abr., 196, 201.] The rule of the

common law relative to the return of a sheriff on mesne process is the same; and it necessarily must be as it falls within the same reason. . . . To every practicing lawyer it is familiar, that the return of a sheriff on mesne process, is held, by the courts in this State, to be prima facie evidence only. This, so far as my knowledge extends, has been the ancient and invariable doctrine of our courts, and conclusively settles the law of Connecticut on this subject. For this departure from the English common law, I am unable to assign the precise reason. I presume it must have been believed that the prima facie evidence only allowed to a return is a sufficient security to the rights of the people, and necessary to prevent the perpetration of irreparable wrong.' The same position has been taken in New York, Indiana, Kansas and Wisconsin. [Ferguson v. Crawford, 70 N. Y. 253; Butler v. State ex rel., 20 Ind. 169; Mastin v. Gray, 19 Kan. 458; Pollard v. Wegener, 13 Wis. 569.]    We see no reason for departing from the rule of the common law. If it is thought wise to permit the return of a sheriff on mesne or final process in any case, where the suit is not against him and his sureties for a false return, to be contradicted, the Legislature should furnish the remedy. We think the rule of the common law was founded in wisdom. Others besides the defendant to the suit are interested, that the return of the sheriff should be regarded as absolutely true. Rights of property would suffer under any other rule, and there is sufficient protection against false returns of sheriffs in the right of action directly against him and his sureties. If this rule is rigidly adhered to, sheriffs will be much more careful, and the rights of the citizens much better preserved, than if his returns either in mesne or final process could be contradicted. The only benefit, that could be given to the petitioner, would come through permitting her to contradict the sheriff's return, that she was served with process in the suit. He had no

authority to serve the process as such officer outside of the State. If he had done so, such correction would entirely have destroyed his return. As we said in Bowyer v. Knapp, 15 W. Va. 291, we do not mean to decide, whether under our statute the return of the sheriff on process may not be contradicted by plea in abatement filed in the suit at the proper time. The court was justified in decreeing that the bill should be taken for confessed upon the return of the sheriff. The petition was properly dismissed.''

Goddard v. Harbour, 56 Kan. 744, was a bill in equity to enjoin the enforcement of a judgment at law on the ground that the court was without jurisdiction to render it, because the sheriff's return of personal service upon the defendant was false, the fact being that the defendant never had been served at all. The lower court issued the injunction prayed for, but the Supreme Court reversed the judgment without remanding the case, saying: ''But the real question in this case is whether there may be any contradiction of the return outside of the record itself. In England it has been the established law from a very early day that the return is conclusive as between the parties, and that the remedy of a party injured by a false return is by an action against the sheriff on his official bond, in which case alone the truth or falsity of the return may be inquired into. [19 Viner's Abridgment, 210; 6 Comyn's Digest, 242.] In this country there is much diversity of judicial opinion on the subject, but the decided weight of authority seems to support the position that, as to matters falling within the personal knowledge of the sheriff, his return is conclusive as between the parties to the record, unless the falsity of the return is disclosed by some other portion of the record of the case.'' The court reviews the adjudications pro and con in other States and the prior decisions in Kansas, as to which latter it is said that they only hold that the right to controvert the sheriff's return is lim-

ited to matters not within his personal knowledge, and then concludes its discussion as follows: "Much can be said by the way of argument for and against the rule which makes the sheriff's return conclusive. We deem it the safer course to yield. our assent to a rule which has met with the approbation of so large a majority of the courts, and incline to the opinion that the weight of reason rests with that of authority. This case fairly illustrates the dangers and difficulties arising if the opposite rule is followed. Where there is a return of personal service, ordinarily the person served will be the only person who can flatly contradict it, unless the officer himself does so. The service on John J. Harbour was entirely regular, and a summons was left at the residence of Frances J. Harbour, if not in fact handed to her in person, as testified by Brown. To set aside and annul a judgment duly entered on such slight proof of what can hardly be termed more than a technical defect in the service, is certainly establishing a bad precedent, and in our view a much more dangerous one than the rigid rule which we deem best to follow in this case. Under all the authorities, the proof required to controvert a sheriff's return must be clear and convincing. But if we were to permit an inquiry into its truth, we should be met in every case brought into this court by the other rule, that the decision of the trial court on a disputed question of fact is final. We should then rest under the necessity of affirming judgments like the one now under consideration, or of weighing conflicting testimony. The hardships which may possibly result from the rule adopted are not so great nor so probable as might at first appear, when it is considered that the sheriff acts under oath and is responsible on his official bond. If he makes a mistake the court to which the process is returned may permit him to amend. The proceedings of our district courts are matters of general notoriety. Judg-

ments are not entered here as in New York by the clerk in vacation, but must always be taken in open court. In giving conclusiveness to a sheriff's return as to those matters coming within his personal knowledge, we do no more than give it the same credit as the parts of the record written by the clerk, any of which may be corrected under the direction of the court when application is duly made but cannot be contradicted by parol testimony.''

The annotators of Smith's Leading Cases, Hare and Wallace (1 Smith's L. C. 842), sum up the law on this subject as follows: ''Whatever the rule may be where the record is silent, it would seem clearly and conclusively established, by a weight of authority too great for opposition, unless on the ground of local and peculiar law, that no one can contradict that which the record actually avers, and that a recital of notice or appearance, or a return of service by the sheriff, in the record of a domestic court of general jurisdiction, is absolutely conclusive, and can not be disproved by extrinsic evidence.''

Taylor v. Lewis, 2 J. J. Marsh. (Ky.) 400, was a suit in equity to enjoin a judgment at law on the ground that the sheriff's return of service was false. The Supreme Court of Kentucky said: ''This question then arises, can Lewis impeach that return, by a proceeding in chancery? If the bill had alleged a fraudulent combination between Taylor and the sheriff, to make a false return, so that judgment might be obtained without the knowledge of Lewis, we should have no doubt, but that a court of chancery might grant relief, upon proving the facts. But when the plaintiff at law, acts in good faith, and the sheriff returns the process, executed, when in truth, it never was, it is our opinion, that the return is conclusive against the defendant, in favor of the plaintiff. If the sheriff acts contrary to his duty, he is responsible to the party injured. It would lead to mischievous consequences, if

the official return of an officer, in favor of a party, acting in good faith, could be impeached in chancery, to the prejudice of the innocent party, and he made to suffer for another's wrong. We are clear, that this ought not to be done collaterally, in a proceeding to which the officer, whose act is to be impeached, is no party. The officer is no party to this suit. The evils resulting from tolerating an impeachment of a sheriff's return, collaterally, are pointed at in the case of the Sergeant of this court, against George, 5 Litt. 199; and although the question is not there expressly settled, we think the intimation clear, from the reasons given, that the judges then on the bench would have concurred with us. Regarding the sheriff's return as conclusive upon Lewis, he has failed to make out any grounds for the jurisdiction of a court of chancery. If he has been injured, he has redress at law.''

Thomas v. Ireland, 88 Ky. 581, was a suit in equity to enjoin the enforcement of a judgment at law on the ground that the sheriff's return was false and that there was in fact no service. The court said: ''It is well settled by this court that where the plaintiff acts in good faith in obtaining a judgment upon the return of the sheriff, endorsed upon the summons, that it was executed on the defendant, though in fact it was not, the return is conclusive as between the plaintiff and defendant. The stability of judgments require this rule; otherwise, judgments settling the rights of parties and giving remedies for the enforcement of these rights could never be regarded as permanent, but would be liable to be set aside, and the rights settled thereby be re-opened, when the facts, not only appertaining to the service of the summons, but the merits of the controversy, had been forgotton or rendered unavailing by reason of the death of the parties or witnesses. Of course, if the plaintiff induces the sheriff to make a return that he had served the summons, when he had not, whereby the plaintiff is enabled to

obtain judgment against the defendant, the chancellor would not hesitate to set the judgment aside, upon the ground that it was fraudulently obtained. Also, if he knew the sheriff had made a false return and took judgment against the defendant, notwithstanding, he would be regarded as an aider and abettor of the fraud, and the chancellor would set aside the judgment. But as long as the plaintiff is an innocent party, no false return of the sheriff, though procured by one of the defendants, and that defendant the husband of the wronged defendant [which is exactly the case here if what the sheriff says as to the first return is true], will justify setting aside the judgment as against the plaintiff. His protection lies in the fact that he is an innocent party. When the plaintiff is an innocent party the sheriff and his coadjutor, if he has one, are the wrongdoers, and the wronged party may have an action against them, or either, for damages commensurate to the injury he has sustained growing out of the wrongful act. Also, as the sheriff is the wrongdoer and not a party to the judgment, the proceeding to impeach his return is collateral; and it is well settled that his return can not be impeached in a collateral proceeding for the purpose of setting aside or of getting rid of a judgment authorized by such a return.''

The petition in that case alleged that the husband of the plaintiff had induced the sheriff to return the summons as personally served on his wife, the plaintiff in that action, so as to conceal from her the fact that there was danger of her land being sold.

Johnson v. Jones, 2 Neb. 126, was a bill in equity to declare a judgment at law void and to enjoin its execution on the ground that the sheriff's return was false and the defendant therein in fact had no notice. The lower court granted the relief, but the Supreme Court reversed the judgment without, remanding the case. The Supreme Court said: ''It is insisted, that inasmuch as this petition is filed in the same court

which rendered the judgment impeached by it, and the parties to the petition and the judgment are the same, the judgment is drawn in question directly, and not collaterally; and the rule is invoked, that, where a record is assailed by a direct proceeding, jurisdiction must appear, and will not be assumed from the fact of its exercise; while, if it be questioned collaterally, jurisdiction will be presumed, unless the record disproves it. Such undoubtedly is the rule. A party to a finding, judgment, or decree, concerning himself, prejudiced thereby, must resort to some one of the various modes provided by law for appeal, review, rehearing, or impeachment by writ of error. [Citing cases.] The question remains to be determined whether the return of the sheriff may be assailed by extrinsic evidence. Whatever the rule may be when the record is silent, it would seem clearly and conclusively established, by weight of authority too great for opposition, unless on the ground of local and peculiar statutes, that no one can contradict what the record actually avers; and that a recital of notice or appearance, *or a return of service* by the sheriff in the record of a domestic court of general jurisdiction, is absolutely conclusive.''

Gardner v. Jenkins, 14 Md. 58, was a suit in equity to enjoin a judgment at law because the sheriff's return was false. The lower court granted the injunction, but the Supreme Court reversed the judgment, holding that as there was no allegation that the plaintiff was guilty of fraud, the sheriff's return was conclusive, and a court of chancery had no power to interfere.

Preston v. Kindrick, 94 Va. 760, was a suit in equity to enjoin the enforcement of a judgment at law, on the ground that the sheriff's return was false. The lower court granted the injunction, but the Supreme Court reversed the judgment. The court calls attention to the discussion of the subject in Freeman on Judgts., sec. 495, where the holdings of several State

courts are collated, and says that the better doctrine is that the return is conclusive between the parties and can not be attacked in equity, except in cases where the plaintiff procured or induced the sheriff to make the false return. The court in so holding disagrees with the learned textwriter who takes the side of the courts in those States wherein it is held that the officer's return is only prima facie evidence and can be assailed and the judgment based upon it set aside by a bill in equity.

The limits of an opinion preclude a further detailed examination of cases. The discussion, however, demands the statement that Black on Judgts. (2 Ed.), vol. 1, sec. 377; Freeman on Judgts. (4 Ed.), vol. 2, sec. 495; 16 Am. & Eng. Enc. Law (2 Ed.), p. 388; and the courts of Pennsylvania, Alabama, Mississippi, Tennessee, Arkansas, Iowa, Wisconsin, California, Connecticut, Oregon, Texas and New York, hold that the weight of authority and the better rule is that the return-of the officer is only prima facie evidence and may be contradicted in a suit in equity to set aside the judgment founded upon it. Some of them permit it to be done without any showing that the party complaining had a meritorious defense, while others require such a showing.

This investigation, therefore, discloses that while such is the rule laid down by the textwriters quoted and in the States referred to, the doctrine that the return of the officer is conclusive as between the parties to the record, and can not be impeached in equity, except where the plaintiff in the judgment advised or procured the false return to be made, or knowing of the false return, nevertheless took judgment upon it, has always been the law in England, and is the rule adhered to by the Supreme Court of the United States, and by the Supreme Courts of Georgia, Illinois, Indiana Minnesota, New Hampshire, Rhode Island, West Vir-

ginia, Kansas, Kentucky, Nebraska, Maryland, and Virginia.

Numerically, the State courts outside of Missouri appear to be equally divided upon the subject, but the Supreme Court of the United States and the English courts have always adhered to the rule that the officer's return is conclusive upon the parties to the suit and can not be attacked even in equity, except where the plaintiff in the judgment has aided or abetted in the false return.

It remains only to consider the prior adjudications in this State. It has already been pointed out, at the beginning of this paragraph, that the rule has always been in this State that the sheriff's return is conclusive upon the parties and is not subject to attack in the original case, either before or after judgment.

It is admitted that this is so, but it is said that this court has never decided that the return could not be attacked by a bill in equity. An examination of the prior decisions of this court shows that this court has spoken to that question in only two cases, Phillips v. Evans, 64 Mo. l. c. 23, and McClanahan v. West, 100 Mo. 309, and SHERWOOD, J., spoke for the court in both of those cases.

Phillips v. Evans, supra, was an action at law upon a bill of exchange. The return of the sheriff was that the summons was personally served upon one of the defendants and constructive upon the other two defendants. After judgment by default and execution returned practically *nulla bona,* a second execution was issued. The defendants then appeared and moved to set aside the judgment and to quash the execution, because two of the plaintiffs were dead when the judgment in their favor was entered, and because there was no proper service upon two of the defendants, in that as to one of the defendants whom it appeared was served "by leaving a copy of the summons with a member of the family over the age of fifteen years, at

his usual place of abode in Pettis county," the return was insufficient because it failed to state that the member of the family was "white" as the statute required, and without this, that the return was false because the defendant never lived in Pettis county and never had a place of abode in that county. On the hearing of the motion the sheriff asked and was granted leave to amend his return so as to show that the copy was left with a "white person," member of defendant's family, etc. The defendants then offered to prove that said defendant never had a place of abode in Pettis county. The court excluded the testimony and overruled the motion to quash. The defendants appealed to this court. This court, per SHERWOOD, J., cited and followed Hallowell v. Page, 24 Mo. 590; Delinger's Admr. v. Higgins, 26 Mo. 180; Reeves v. Reeves, 33 Mo. 28; and Jeffries v. Wright, 51 Mo. 215, and said: "The return of the officer is conclusive as to the facts therein recited, except in an action for a false return. . . . The action of the court below, therefore, in the rejection of the evidence in the particular mentioned, will be held correct." After so disposing of all the questions there were in the case, the learned judge added: "The foregoing remarks are, however, to be restricted to purely legal proceedings. For the arm of a court of equity is not too short to throttle a fraud, consummated, or contemplated, having for its basis either a return originally false or one to be made so by a proposed amendment, and this is the view taken elsewhere. [Walker v. Robbins, 14 How. (U. S.) 584; Ridgeway v. Bank of Tenn., 11 Humph. 523; Freeman on Judgts., sec. 495.]"

It will be observed that the case was one at law and not one in equity; that no aid of a court of equity was asked, and that the reference to what a court of equity would do was not necessary to the decision of the case at bar. In addition, the cases cited do not belong to the same class. Walker v. Robbins was de-

cided by the Supreme Court of the United States and holds that the return of the sheriff is conclusive and can not be attacked even in a court of chancery unless it is alleged and proved that the plaintiff in the action aided or abetted the false return. Whereas, Ridgeway v. Bank of Tenn., and Freeman on Judgts., hold to the doctrine that a judgment founded upon a false return may be set aside in equity, the Tennessee courts holding that it is not even necessary to allege that defendant had a meritorious defense.

But whatever may be said of that case, it is clear that the learned author of it did not afterwards regard it as establishing the law in this State that a court of equity has power to set aside or enjoin a judgment at law founded upon a false return, for he wrote the opinion in McClanahan v. West, 100 Mo. 309. That was a suit in equity to set aside a judgment in partition and the deed made pursuant thereto, on the ground that the plaintiff, one of the defendants therein, had no notice of the suit, and was not served with process; that the sheriff's return was false and that the defendant, one of the parties to the partition suit, had conspired with another party thereto to conceal from the plaintiff, who was then a small girl, all knowledge of the partition suit and of the sale of the land. The petition asked that the judgment in partition and the sale thereunder, be set aside, and that she be adjudged an undivided one-seventh part of the land. The learned judge said: "The petition in this cause does not charge that any fraud was used in obtaining the judgment of partition; if this had been done, if it had been charged that fraud was used in the very 'concoction' of that judgment, it would have been admissible to establish such fraud in the present proceeding; regarding it, in that event, as a direct attack on that judgment. [Bigelow on Fraud, 86, 87, 88, 90, 94, 95, 636; Bigelow on Estoppel (3 Ed.), 162, 163; Payne v. O'Shea, 84 Mo. 129].

"The authorities differ on the point whether a judgment can be attacked collaterally for fraud, or whether it can alone be done in a direct proceeding. Very strong reasons may be urged in behalf of either view. [Bigelow on Fraud, 86, 87, 88, 90, 94, 95, 636; Bigelow on Estoppel, 161, 162, 163, 164.] The eminent author just cited holds that no just distinction can be taken between the right of a party injured, to attack 'a judgment concocted in fraud,' whether such an attack be directly made or made collaterally. [Bigelow, Estop. 164]. But it is unnecessary to rule the point now, for the obvious reason that there is no tendency in the testimony adduced by plaintiffs to show fraud in the procuring or concoction of the judgment, nor of any connection of the defendants therewith. This being the case, parol testimony was wholly out of place to show that plaintiff Nancy had not been served with process in the partition suit. And this is true notwithstanding that the judgment in that suit is silent as to the acquisition of jurisdiction by service of process upon her.

"A domestic judgment, rendered by a court of general jurisdiction, cannot be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired. Nothing shall be intended to be out of the jurisdiction of the superior court, but that which specially appears to be so. [Freeman on Judgts. (3 Ed.), sec. 132; Crepps v. Durden, 1 Smith's Leading Cas. (8 Ed.), part 2, 1137, and cas. cited; Freeman v. Thompson, 53 Mo. 183; Lackland v. Stevenson, 54 Mo. 111; State to use v. Williamson, 57 Mo. 192; Huxley v. Harrold, 62 Mo. 516; Gates v. Tusten, 89 Mo. 13; Jeffries v. Wright, 51 Mo. 215; Hallowell v. Page, 24 Mo. 590.]

"But though parol testimony was wholly inad-

missible for the purpose aforesaid, yet it was compet-
ent to supply the missing files in the partition cause.''

The court then holds that the files of the case were
admissible to show whether or not there had been ser-
vice on the defendant therein, and if the files were lost,
parol evidence was admissible as to their contents or
the lost files could have been supplied in the manner
provided by statute. Accordingly, the judgment of the
lower court dismissing the bill was affirmed.

I, therefore, answer the challenge that this court
had never held that a bill in equity will not lie to set
aside a judgment, based upon a false return, with this
decision of this court. This decision holds that in
order to authorize a court of equity to set aside a
judgment of a court of law, there must be fraud in the
very ''concoction'' of the judgment; that a domestic
judgment of a court of general jurisdiction can not be
impeached by the parties to it merely because the rec-
ord is silent as to the acquisition of jurisdiction, but
that, ''such a judgment is equally as conclusive on the
parties thereto, whether it recites, or whether it fails
to recite, that the jurisdiction has been acquired.
Nothing shall be intended to be out of the jurisdiction
of the superior court, but that which specially appears
to be so;'' that Hallowell v. Page, 24 Mo. 590, holding
that the sheriff's return is absolutely conclusive, is the
law in this State; and that parol evidence is wholly in-
admissible for the purpose of impeaching in equity a
domestic judgment rendered by a court of general jur-
isdiction, but that such a judgment can only be im-
peached by the recitals of the record itself or of the
files in the case.

This ought to settle the question so far as this
State is concerned, and it shows that Missouri follows
the rule of the common law and of the Supreme Court
of the United States and of the States referred to which
hold that the sheriff's return is conclusive upon the
parties to the suit, both in the same case and in equity,

except where the plaintiff has aided, abetted or knowingly taken advantage of the false return, and that the injured party is reverted to a suit on the sheriff's bond in an action for a false return.

Upon principle and for practical purposes this is the better and wiser rule, and has become too deeply imbedded in the jurisprudence of this State, and the rights of too many purchasers at sheriff's sales have become fixed upon the faith of the rule, to permit it now to be changed. For it must be apparent that if judgments, and rights acquired under them by third persons, can afterwards be upset by a suit in equity, no one would risk money by buying at an execution sale, or, at best, would discount the risk by giving only a small proportion of the true value of the property. This would result in injury to the debtor and creditor both, for the debtor's lands would not sell for their true value, and the creditor would not realize on his claim in full. But in addition to this consideration, such a rule would offer a premium to a defendant to make default, let judgment go against him, let his land be sold, and a third party buy it, and thus have his debt paid, and then sue in equity to set aside the deed and recover his land by disproving the sheriff's return. Thus his debt would be paid, his creditor would be satisfied, the debtor would recover his land, and the only sufferer would be the purchaser at the judicial sale. Under such a rule, judicial sales would not amount to much when the people once understood the risks incurred. This is exactly the status of the case at bar. For these reasons I think this case was improperly decided on former appeal and that the former decision should be overruled.

## III.

After this case got back into the circuit court, the former sheriff applied for leave in the original case of. Judd v. Smoot to amend his return so as to conform

to the facts by showing that the writ was served on Mrs. Smoot, by leaving a copy with her husband, etc. Mrs. Smoot was notified, appeared, contested the motion, the sheriff was permitted to amend his return as requested, and Mrs. Smoot appealed the case to the Kansas City Court of Appeals, where the judgment was affirmed.

The trial court had power to permit the ex-sheriff to amend his return, and the fact that he was no longer sheriff is immaterial, as he alone could amend it. [Magrew v. Foster, 54 Mo. 259; Feurt v. Caster, 174 Mo. l. c. 297, and cases cited.]

When the return was so amended it related back to the time of the service. [Webster v. Blount, 39 Mo. 500; Kitchen v. Reinsky, 42 Mo. l. c. 436.] Thereafter the only return in the original case was service by copy and not personal. But whether regard be had to either the original or amended return, the result is the same, for the return, whatever it was, is conclusive upon the parties to that suit, and cannot be contradicted in this action, or any other action except a direct suit against the sheriff for false return. This disposes of this case in my judgment, and it is wholly immaterial whether this case was then pending or not, for the result is not to deprive a court of equity of jurisdiction after it had once attached, but to apply the rule of law as to the conclusiveness of a sheriff's return to a case pending in a court of equity, with the result that no relief can be granted under the facts in judgment.

## IV.

It is said, however, that the note was made in 1887, and at that time the plaintiff was incompetent to contract, by reason of being covert, and hence the judgment is a nullity.

It is true that the plaintiff was not bound by her note, and that the Married Woman's Act of 1889 (R. S. 1889, sec. 6864, now sec. 4335, R. S. 1889), making

her a *feme sole* with power to contract, sue and be sued, was not retroactive and did not make her liable for that note. [Van Rheeden v. Bush, 44 Mo. App. 283; Klotz v. Bates, 83 Mo. App. 332; Bragg v. Israel, 86 Mo. App. 338.] But this did not make the judgment a nullity, as was the case prior to the passage of that act. [Bauer v. Bauer, 40 Mo. 61; Bank v. Collins, 75 Mo. 280; Gage v. Gates, 62 Mo. l. c. 417; Weil v. Simmons, 66 Mo. l. c. 618.] The effect of that act was to leave coverture a defense to be pleaded and taken advantage of by a married woman, just as any other litigant must plead fraud, or any other affirmative defense, and the fact of coverture and the failure to plead it, does not render a judgment against a married woman entered since the passage of the act invalid or void, and such a judgment can no more be attacked collaterally now, than can any judgment where the attack is based solely upon an omitted defense. The judgment can only be attacked directly for fraud in the very act of procuring it. [Bates v. Hamilton, 144 Mo. 1; Fears v. Riley, 148 Mo. l. c. 58; Neun v. Blackstone B. & L. Assn., 149 Mo. l. c. 80; Swinford v. Tee-Garden, 159 Mo. l. c. 642; Crim v. Crim, 162 Mo. l. c. 554; State ex rel. v. Shaw, 163 Mo. l. c. 196.]

Reference is made to the fact that Judd knew that Mrs. Smoot was a married woman, and yet he did not describe her in the petition as a married woman, and while it is said that this did not constitute a fraud on Judd's part, "that omission is a fact which conspired with other facts to deprive her of her defense without any neglect on her part." [Smoot v. Judd, 161 Mo. l. c. 688.] In my opinion Judd was not obliged to state in his petition that Mrs. Smoot was a married woman, and if it was not a fraud in the very concoction of the judgment, then the omission so to state cannot, either by itself or in connection with anything else, afford any ground whatever for setting aside the judgment.

Quoad that case, Mrs. Smoot had been brought into

court in one of the modes prescribed by law.  He knew she was a married woman.  She alone could take advantage of that fact.  She could only raise the question by a plea.  She made default.  Judd did not prevent her from making that or any other defense she had.  She chose to let judgment go, when she had a good defense. She is now in no better condition to ask the aid of a court of equity, than any other person would be who had a good defense and did not interpose it at the proper time.

## V.

.But aside from all these considerations, there is no equity in the bill, and she is not entitled to a decree upon the facts, even if she was entitled to maintain a suit in equity under such circumstances, and even if she had a right to contradict the sheriff's return in this proceeding.

If all she says as to the want of service of the original summons be true, the fact still remains substantially uncontradicted that after the judgment had been rendered against her she knew of the judgment and took no steps to avoid it or to get it set aside.  On the contrary she waited until her interest in the land was levied on and until a day or two before it was to be sold under execution on the judgment, and then she employed counsel and went to see Judd's attorney in person, to obtain six months time in which to redeem the land after it should be sold, and she entered into a written contract with Judd, whereby twelve months time to redeem was given her.  She took advantage of that extension and agreement, but did nothing.  The land was sold on March 10, 1902.  Judd waited for her to redeem until October 30, 1903, which was nineteen months, and as she did nothing, he filed the suit for a partition.  She filed an answer in that case in which she denied that she had ever conveyed her interest in the land to Judd, but she said nothing

about the original Judd judgment being void because the summons was not served upon her or because she was a married woman when the debt was contracted and when the judgment was rendered. The court struck out her answer, and she submitted to the ruling of the court, and took no further steps at that time to protect her interests or to warn others of the claim she now asserts. On the contrary she stood by and saw the land sold to innocent third persons under the partition decree on September 3, 1894, and even after that she waited until August 18, 1895, before she brought this suit. Now she predicates a right to equitable aid, on the ground that the sheriff's return, made on July 28, 1891, of which she concededly had notice as early as March, 1892 (she says in this petition she knew it as early as March, 1893), when the property was about to be sold and she made the agreement to redeem, was false.

In short she asks to recover the land from innocent purchasers at a judicial sale, after her debt has been paid by the sale of the land, and after she has recovered a judgment against the sheriff for false return—nominal, it is true, but she submitted to it and aside from this it must be presumed to represent compensation for all she had lost, and after she had been guilty of all the laches herein pointed out. There is no equity in the bill.

## VI.

There is yet another reason I think why this judgment should be affirmed. The only witness who testified that the sheriff's return was false was Mr. Smoot. His testimony is a simple negative. It is without any supporting or corroborating fact or circumstance.

On the other hand the sheriff testified to the truth of the amended return, and explained the reason for making the first return to be that Mr. Smoot told him his wife was sick and he could not see her, but to leave

the writ with him and return it as personally served.
The sheriff is corroborated collaterally by the testimony of Mrs. Smoot's attorney, Capt. Cole, and by the
testimony of Judd's attorney that before the sale she
knew of the judgment and only wanted time in which
to pay it, and by the written agreement as to time, and
by the character of the answer of Mrs. Smoot in the
partition case.   The preponderance of the testimony,
therefore, is in favor of the truth of the amended return.   But aside from this, two chancellors have
tried the case, have seen the witnesses, and heard their
testimony, and both of them refused to believe the testimony of Mr. Smoot.   This court ought not to substitute its finding of fact for that of the chancellor under
such circumstances.   Even in States where a bill
in equity is held to lie to set aside judgments at law
based upon alleged false returns, the courts have refused to do so where there is only the oath of one person against the oath and return of the officer.   Such
was the case in Gatlin v. Dibrell, 74 Tex. 36, where
the court said that such evidence was wholly insufficient
to prove the falsity of the return, saying: "In the
case of Randall v. Collins, 58 Tex. 1. c. 232, it is said:
'But assuredly, if equity will allow one who has been
guilty of no fraud or negligence to contradict the sheriff's return by parol evidence for the purpose of having an unjust judgment by default set aside, we are of
the opinion that it should require the evidence to be
clear and satisfactory.   It is not like an ordinary issue
of fact, to be determined by a mere preponderance of
testimony.'"   In the same case the court quotes with
approval from the case of Driver v. Cobb, 1 Tenn. Ch.
490, the following language:   "Nor will one witness
alone suffice to successfully impeach the return, for
that would only be oath against oath.   In analogy to
the denials or averments of a sworn answer upon the
defendant's knowledge, there should be two witnesses,

or one witness with strong corroborating circumstances. And, without reference to this rule, upon general principles it would seem essential to the peace and quiet of society that these solemn official acts should not be set aside with the same ease as an ordinary act *in pais.*"

While the finding of facts by the lower court in an equity case is not conclusive upon this court, nevertheless, it has ever been the practice to defer largely to it. If there ever was a case where it should be deferred to, it is this case.

## VII.

Lastly, it is said that while the sheriff's return can not be impeached in the original case or by a bill in equity, if a third person became the purchaser of the property under an execution issued upon a judgment that was based upon a false return by the sheriff, and while the law in this State is that a false return cannot be impeached at law, even in the original case, nevertheless it can be impeached and the judgment, and its subsequent effects and consequences, can be adjudged to be void in a direct attack in equity, if the party to the suit becomes such a purchaser.

To my mind no such distinction can be logically or scientifically maintained.

The admitted principle as to third persons is that they are innocent purchasers; that they have a right to rely upon the integrity and conclusiveness of the judgment, and that to hold otherwise would be to destroy the protection the law gives to purchasers at judicial sales.

The foregoing discussion must be lame and impotent if it does not clearly show that the rule that has always obtained in England, and in the Supreme Court of the United States, and in the twelve States hereinbefore referred to, and in Missouri, is that the sheriff's return is conclusive in favor of, as well as against, all

parties and privies to the action, and any loss caused by its falsity can only be redressed in an action against the sheriff on his bond, unless the plaintiff in the case was a party to the false return or knew of it and so knowing took advantage of it, and hence was guilty of a fraud in the very concoction of the judgment.

The corollary of this rule is that if the plaintiff was not guilty of such a fraud, but if the sheriff alone was guilty of the fraud, then the plaintiff is an innocent party, and being so, the judgment forecloses all inquiries and precludes all attacks upon it.

Now this is solely and purely because the plaintiff is an innocent party and because being innocent he is entitled to rely upon the integrity and conclusiveness of the judgment, and if he becomes the purchaser at the execution sale, he is entitled to the protection which the law gives to purchasers at judicial sales.

There is, therefore, no difference between an innocent plaintiff who purchases at the execution sale and an innocent third person who purchases at such a sale. The test in both cases is the innocence of the purchaser and not the relation of the purchaser to the suit.

That this is true is easy to show. For instance: it cannot be denied that if a third person procures or aids or abets the sheriff to make a false return with the purpose to buy the property at the execution sale, he is not an innocent purchaser, and hence is not protected, and the sale may be decreed void in equity for fraud. And this is true even if the plaintiff in the action was innocent. For in such case the innocent plaintiff would have received satisfaction of his judgment, and would not be injured by declaring the sale to the fraudulent third person to be void. This is just as true as the converse of the proposition that the innocent purchaser is protected even though the plaintiff may have been guilty of a fraud in the procurement of the judgment.

In both cases the law punishes the fraud, but protects the innocent party.

It follows, therefore, as clearly and inexorably as human wisdom can demonstrate, that the whole question turns upon the innocence of the purchaser at the judicial sale, and not upon the consideration whether such person is a party to the case or a third person.

The plaintiff at the execution sale in this instance was the plaintiff in the case, but it is not even asserted or intimated that he was guilty of any fraud in the procurement of the judgment nor that he procured, aided or abetted the sheriff in any manner in the making of the return, nor that he knew it was false and took advantage of it. In the view of the law he is, therefore, just as innocent and entitled to as much protection as any innocent third person who purchased at the execution sale could be.

This is the logic of McClanahan v. West, 100 Mo. 309. One of the plaintiffs was the purchaser at the judicial sale, and the action was against him to set aside the judgment and sale by a suit in equity. But as there was no fraud shown on his part in the concoction of the judgment he was protected, notwithstanding it was alleged that he was guilty of fraud and concealment after the judgment was rendered and after he became the purchaser.

## VIII.

Since writing the foregoing, the facts in judgment, as well as the law applicable to such cases, have again been reviewed and the cases herein referred to have been criticised, and it is now said that neither those cases, nor any others to be found, afford any support for the position herein taken, but that the great weight of adjudication, as well as the authority of the text-writers, establishes the rule to be, that a judgment by default at law can be impeached in equity upon the ground that the sheriff's return is false and upon a

showing that the defendant in the judgment had a meritorious defense; and further that the facts in judgment here show that the plaintiff herein has been grievously wronged, and that the defendants Brand and Jackson, who purchased the property at the partition sale, are not innocent purchasers, but that they had notice that the return was false.

I disagree utterly with both the conclusion of law and fact so announced and because of the great importance of the legal principles involved, and so that there may be no room for misunderstanding concerning what is involved, both as to the law and the facts, and as to what is intended to be decided in this case, no apologies are necessary for here critically and thoroughly analyzing the opinion of the learned judge as well as again examining the law and the facts of the case, calmly, courteously and fairly, but without impairing the force or logic of the discussion. I am convinced that I can demonstrate to a certainty that the cases I have herein referred to, amply and thoroughly support the position I have taken, and that the criticisms levelled against them are not tenable, and that the facts in judgment show that Judd, his attorneys, and the said purchasers, Brand and Jackson, are absolutely innocent of the slightest fraud or suspicion of fraud in the whole matter, and are innocent parties in the transaction, and that if the plaintiff herein has suffered any loss she has herself and her husband to blame for it.

The opinion under review starts out by conceding that the law has always been in this State that the sheriff's return is conclusive at law even in the original case, before judgment, between the parties to the action and their privies, as well as upon the sheriff; and further that it is likewise conclusive after judgment, even in equity, as between the parties to such action, and, third, innocent purchasers at an execution sale under the judgment.

The contention of the learned judge, however, is, that notwithstanding this rule, the judgment may be impeached in equity by the defendant in the judgment showing that the sheriff's return is false and that the defendant had no notice of the suit, and that he had a meritorious defense. This is not the law, but on the contrary the better law and the rule in this State is, that the return of a sheriff is conclusive in the original suit before judgment upon the parties to the suit as well as upon the sheriff, and also is conclusive after judgment even in a proceeding in equity, upon the parties to the action, in all cases except where it is charged and shown that the plaintiff in the judgment procured the sheriff to make a false return, or aided or abetted him in so doing, or knowing, before judgment, that the return was false, took advantage of it and asked for judgment thereon; or in other words, except where the plaintiff in the judgment was guilty of a fraud in the very concoction of the judgment.

An analysis of the criticism levelled at the cases hereinbefore referred to demonstrates that the criticism is untenable. The first case criticised is Walker v. Robbins, 14 How. (U. S.) 584. As hereinbefore pointed out, that was an injunction to restrain the enforcement of a judgment, based upon a marshal's return of personal service, which the deputy marshal, who made the service, testified was false. The criticism of the decision of the Supreme Court of the United States is, that the court said, "We are of opinion, however, that the return was not false; but if it was, that Walker waived the want of notice by pleading to the action," and then the opinion under review herein asks, "What room was there under the facts of that case for the discussion of the question of equity jurisdiction with which we are now concerned?"

In other words the criticism is, that as the return was held to be true, notwithstanding the testimony of the deputy marshal who served the process, that it was

false, and as the defendant waived the want of notice by pleading to the action, therefore the Supreme Court of the United States unnecessarily and improperly indulged in some *obiter dicta* when it held that a bill in equity would not lie to impeach the return, and hence what that court said is no support whatever to the position herein taken.

The fact is that the court held in that case that the plaintiff was not entitled to the relief sought, because, first, a bill in equity will not lie to enjoin a judgment at law, based upon a false return, and, second, that in fact the return was not false, even though the deputy marshal who served the process swore it was. As hereinbefore pointed out, the court first examined the law applicable to such cases, upon the assumption that the return was false, and held that a bill in equity would not lie, and then found the facts to be that the return was not false and that the defendant had waived the want of notice by pleading to the action.

What the court said was this: "Assuming the fact to be that Walker was not served with process, and that the marshal's return is false, can the bill, in this event, be maintained? The respondents did no act that can connect them with the false return; it was the sole act of the marshal, through his deputy, for which he was responsible to the complainant, Walker, for any damages that were sustained by him in consequence of the false return. This is free from controversy; still the marshal's responsibility does not settle the question made by the bill, which is, in general terms, whether a court of equity has jurisdiction to regulate proceedings, and to afford relief at law, where there has been abuse, in the various details arising on execution of process, original, mesne, and final. If a court of chancery can be called on to correct one abuse, so it may be to correct another; and in effect, to vacate judgments, where the tribunal rendering the same would refuse relief, either on motion, or on a proceeding by

*audita querela,* where this mode of redress is in use. In cases of false returns affecting the defendant, where the plaintiff at law is not in fault, redress can only be had in the court of law where the record was made, and if relief can not be had there, the party injured must seek his remedy against the marshal.

"We are of the opinion, however, that the return was not false; but if it was, that Walker waived the want of notice by pleading to the action."

Thus the court held that upon the case made by the plaintiff he could not recover as a matter of law, but that the defendant's testimony had overcome the case made by the plaintiff, and for this reason also, the plaintiff was not entitled to recover.

The gist of the criticism is that because the court found the facts to be as the defendant contended, therefore, what the court said was the law if the facts had been as the plaintiff showed, was *obiter* and improper, and hence is no decision as to what the law is, and affords no support to the position herein taken.

This plain statement disposes of the criticism.

The decision of the Supreme Court of the United States in Knox Co. v. Harshman, 133 U. S. 152, is also criticized.

That was a bill in equity to restrain the enforcement of a judgment at law, on the ground that the bonds, for the recovery of which the judgment was rendered, were void, and because the return of the sheriff was false. The court said: "The officer's return stated that he served a copy of the summons upon the clerk. If that return were false, yet no fraud being charged or proved against the petitioner, redress could be sought at law only, and not by this bill. [Walker v. Robbins, 14 How. 584.]"

The criticism is that the law as thus declared was *obiter* and of no weight because the court so holding found the fact to be, as the defendant claimed, that the return was not false. What is hereinbefore said with

respect to the criticism of the case of Walker v. Robbins, supra, applies equally to the criticism of Knox Co. v. Harshman.

Thus it appears that from 1852, when Walker v. Robbins was decided, until 1890, when Knox Co. v. Harshman was decided, the Supreme Court of the United States has always held, and, so far as appears, still holds, that the law is that a bill in equity will not lie to restrain the enforcement of a judgment at law, based upon a false return, unless the plaintiff in that judgment was shown to have knowledge of the falsity of the return and to have participated in it in some way, but that the party injured by the false return is reverted to an action against the sheriff.

This being true, it is wholly erroneous to say that no case has been found in the books that supports the doctrine herein stated. If there were no other cases found, these cases themselves would fully refute the statement, and would afford at least respectable authority for that position.

But in further refutation of the statement, let it be noted that it is hereinbefore pointed out that the rule herein announced has been the uniform rule in England ever since the English courts have ever spoken on the subject, and that while the decisions of the Supreme Court of the United States and of the States hereinafter referred to are criticised, no reference whatever is made to the English cases and no criticism is levelled against them.

So in addition to the support given by the Supreme Court of the United States to the position here taken, the English decisions are also tacitly conceded to be to the same effect.

The cases of Stites v. Knapp, Ga. Dec. part 2, p. 36, and Baker v. Morgan, 2 Dow's Reports 526, are hereinbefore referred to and analyzed. The first was a decision by the Supreme Court of Georgia, and the latter was a decision by the House of Lords in England.

They were both suits in equity to set aside judgments at law based upon alleged false returns of the sheriff. Relief was denied in both cases. The Georgia Supreme Court held that if the return was false, the sheriff was liable on his bond, but that the truth or falsity of the return could not be inquired into in equity. In the English case Lord REDESDALE said "that equity might try whether a judgment was obtained by fraud, but he never heard of trying proceedings at law for irregularity," and Lord ELDON expressed the same view.

These cases are not referred to in the criticism under review. Yet they are directly in point and must be added to the list of cases that support the doctrine here announced.

Hunter v. Stoneburner, 92 Ill. 75, is next criticised and declared to afford no support for the doctrine here announced.

That was a bill in equity to set aside a judgment in partition on the ground that it was procured by fraud, and because the return of the sheriff was false. The plaintiff in the partition suit purchased the property at the sale in partition and afterwards sold it to a third person, the defendant Stoneburner. The Supreme Court of Illinois found that there was not the slightest evidence of fraud in the case, and then said: "It, then, appearing that appellee was served with process, he must be bound by the officer's return. It is in rare cases only, that the return of the officer can be contradicted, except in a direct proceeding against the officer for false return. In all other cases, almost without exception, the return is held to be conclusive. An exception to the rule is, where some other portion of the record in the same case contradicts the return, but it can not be done by evidence *dehors* the record." Accordingly, relief in equity was denied.

The criticism of this case is that no fraud being found the bill disclosed no equity (because presumably there was no charge of meritorious defense in addition

to the charge of false return) and that the conclusion reached was right, because the guardian *ad litem* had filed an answer for the minor defendant who claimed not to have been served, and because the rights of innocent third persons had intervened.

The first criticism is, that because the case made was such as would not warrant a court of equity to afford any relief under the rule contended for by the learned judge whose opinion is under review, because no meritorious defense was shown in addition to the falsity of the return, therefore, the Supreme Court of Illinois reached the right conclusion, and hence, although that court did not act upon any such rule, the principles of law upon which it acted are of no consequence and afford no authority for the position herein taken. It is enough to say that the court stated in very plain language that it refused equitable relief because the sheriff's return was conclusive and could not be contradicted by evidence *dehors* the record, and that the only remedy the aggrieved party had was by a suit on the sheriff's bond.

The second criticism of that case is that the relief was properly denied because the guardian *ad litem* filed an answer for the minor defendant who had not been served.

Of this it is only necessary to say that in this State a guardian *ad litem* can only be appointed for a minor defendant who has been personally served, and that no guardian *ad litem* can enter the appearance of a minor defendant or waive notice of suit for him and a judgment against a minor upon such appearance is void. [Hendricks v. McLean, 18 Mo. 32; Smith v. Davis, 27 Mo. 298; Shaw v. Gregoire, 41 Mo. 407; Campbell v. Gas Light Co., 84 Mo. 352; Fischer v. Siekmann, 125 Mo. 165.] In the last case cited, BRACE, J., speaking for this court, held that where a minor defendant is not served with process, the court acquires no jurisdiction, and can not appoint a guardian *ad litem* for him, and such

a guardian can not enter his appearance, and the judgment against him is void.

The third criticism of that case is that the rights of third innocent persons had intervened, and hence the conclusion was right although the principles of law announced by the court as the reason that induced it to reach that conclusion were wrong.

It must be noted that while the Supreme Court of Illinois held that the defendant was an innocent purchaser from the plaintiff in the partition suit who bought at the partition sale, and so was protected against the claim of the defendant in that case that the sheriff's return was false, this in nowise militates against the rule laid down by that court as to the jurisdiction of a court of equity. It will also be noted that the court held in that case that a purchaser at a partition sale need not look behind the decree in partition to ascertain whether the sheriff's return was false or not, or whether any other step in the case had been properly taken or not, for the decree was *res adjudicata* as to those questions upon all parties to the action.

The criticism of this case, therefore, fails, and this case must also be included in the list of cases that support the doctrine here announced.

But in this connection it is proper to say that if the defendant in that case who had purchased from the plaintiff in the partition suit, who had bought at the partition sale, was an innocent purchaser, as the criticism says he was and as the Illinois court held he was, it is not conceivable how the opinion under review here can say that Brand and Jackson, who purchased at the partition sale here involved, and not from a party to the suit who had purchased at the partition sale, are not innocent parties. But as to this feature of this case, more anon.

In this connection, however, it is proper to further say, that in view of the decision of the Supreme Court of Illinois in Hunter v. Stoneburner, supra, it is not

·conceivable how the learned judge could cite the earlier cases in Illinois, of Owens v. Ranstead, 22 Ill. 161; Hickey v. Stone, 60 Ill. 458; and Weaver v. Poyer, 79 Ill. 417, and upon their authority put Illinois in the list of States that hold to the doctrine contended for by him. In view of this last emphatic utterance of the Supreme Court of Illinois, that State must be taken out ·of the list of States which the learned judge says hold to the rule contended for by him, and must be allowed to remain where it is classed hereinbefore, as among the States that follow the rule herein announced.

Cully v. Shirk, 131 Ind. 76, is sought to be distinguished from the case at bar upon the theory that relief in equity was denied in that case because the plaintiff therein did not allege or prove that he had a meritorious defense to the action at law, but relied solely upon the falsity of the sheriff's return.

The Supreme Court of Indiana calls attention to the fact that there was no allegation or proof of meritorious ·defense. But the case did not turn upon that proposition. On the contrary, the court reviewed the prior adjudications in that State and clearly pointed out that the case did not come within the provisions of the statute which granted relief where a defendant who had a meritorious defense was prevented from making that defense by "his mistake, inadvertence, surprise or excusable neglect," as was the prior case of Nietert v. Trentman, 104 Ind. 390, nor was it within the rule laid down in Dobbins v. McNamara, 113 Ind. 54, where in addition to a charge of the falsity of the return it was averred that the return was procured by the fraud of the plaintiff's attorney. The court then said: "The distinction between the cases is marked and important. The elements of fraud and the non-residence of the defendant, lacking in this case, were in that case controlling." And then added that it had considered the case upon the ground assumed by the parties that the attack was direct and not collateral, but that this was not the

fact, and held that the attack was collateral, and said that "any attack upon a judgment for want of jurisdiction in the court to render it, predicated upon matter *dehors* the record, is collateral."

The criticism of this case is therefore untenable.

The criticism of Tullis v. Brawley, 3 Minn. 277, is that it was an action at law by a purchaser at a sheriff's sale to recover the purchase price paid for the property bought at the judicial sale, on the ground that he got no title, and therefore what the court said as to the conclusiveness of the sheriff's return has no application to a case of equity jurisdiction.

This is not a correct statement of the case. The action was predicated upon the theory that the sheriff's return that he had levied on the property sold was false and that the plaintiff had lost his money by relying upon that return. The plaintiff was a third innocent party. He insisted that the return was false and that it was open to attack. The defendant, who was the sheriff, contended that the return was conclusive in this form of action. The court so held, using the language hereinbefore set out.

The rationale of that decision is, that the return of a sheriff is conclusive upon all parties, even upon innocent third persons who purchase at judicial sales, in all kinds and forms of proceedings, except in a direct suit for damages against the officer on his bond. This decision is illustrative of how strictly the courts of that State enforce the rule under discussion, and is more comprehensive and far-reaching than the opinion under review here seems to appreciate.

But if what is said in that case is *obiter* because it was said in an action at law, by what process of logic can the learned judge be permitted to rely so strongly upon what was said by this court in Phillips v. Evans, 64 Mo. l. c. 23? That was a proceeding at law, by motion of the sheriff to be allowed to amend his return. This court held that the truth or falsity of the

original or of the amended return could not be inquired into in a court of law, but added that the arm of a court of equity is not too short to throttle a fraud, consummated, or attempted, having for its basis either a return originally false or one to be made so by a proposed amendment. If what was said by the Supreme Court of Minnesota, in Tullis v. Brawley, supra, is to be discarded as *obiter,* because uttered in a proceeding at law, then what was said by this court in Phillips v. Evans, supra, must also be *obiter* for the same reason, and if this is done it would leave the opinion under review absolutely without a shadow of support by the decisions in this State. For, as hereinbefore pointed out, the learned judge who made the remark quoted in Phillips v. Evans, held exactly the contrary in a direct proceeding in equity when the question was squarely presented, and said that parol evidence was inadmissible to contradict a sheriff's return, even in equity. [McClanahan v. West, 100 Mo. 309.]

What is here said applies equally to the criticism of Bolles v. Bowen, 45 N. H. 124, which holds that the return is conclusive as to the parties to the action, and that "the remedy for a false return is by suit against the sheriff, and not by defeating the proceedings in which such return was made." In this connection it is proper to note that the court, in deciding Bolles v. Bowen, supra, referred to Hall v. Tenney, 11 N. H. 516, as a very similar case, and that in the latter case it was held that the sheriff's return is conclusive between the parties to the suit and can only be attacked for fraud, and that if anyone suffers by the default of the officer, "he has his remedy by an action against him for a false return," citing Woods v. Varnum, 21 Pick. 165.

The opinion under review says that Barrows v. Rubber Co., 13 R. I. 48, hereinbefore referred to, has been overruled by the later case of Dowell v. Goodwin, 22 R. I. 287. This is not strictly accurate. In Dowell v. Goodwin, the court referred to Barrows v. Rubber Co.,

and instead of overruling it, undertook to distinguish the case at bar from that case by saying that the rule laid down in that case applied only to common-law actions. The court failed to observe that Barrows v. Rubber Co. was not a common-law action, but was a bill in equity to set aside a sale under an execution. Barrows v. Rubber Co. is directly in line with all the prior adjudications in that State, and if a new rule was intended to be established, the prior cases ought to have been overruled, and not distinguished. But aside from this, Dowell v. Goodwin can not be accepted as authority in any other jurisdiction. Relief in equity was asked upon the grounds that the return of the sheriff was false and that the defendant in the action at law had a meritorious defense. There was no allegation of fraud. And Judge STORY, and the Supreme Court of the United States and the Supreme Courts of Indiana and New York, are quoted indiscriminately with the Supreme Court of Connecticut and with Freeman on Judgments, as authority, when the fact is that the Supreme Court of the United States and the Supreme Courts of Indiana and New York, in the cases cited, adhere to the doctrine that relief can only be granted where the judgment sought to be relieved against was procured by fraud, while the Supreme Court of Connecticut has always adhered to the rule that equity will relieve against a judgment at law solely upon the ground that the sheriff's return was false; and this too without any allegation of fraud or even meritorious defense.

But, aside from this, Dowell v. Goodwin proceeds upon the theory that a false return is necessarily a fraudulent return. This is not the law. A return may be untrue (as in the case at bar as to the original return) and yet there may be no fraud. Moreover, if it be conceded that a false return is a fraudulent return, the fraud is that of the officer, and as the plaintiff in the action was not a party to that fraud nor charged

with knowledge of it, there was no fraud in the very concoction of the judgment, which is essential to be shown in this State.

If, therefore, Dowell v. Goodwin has overruled the prior decisions in that State it can not be taken as authority in this State.

It will be observed, however, that the opinion under review here in speaking of that case enunciates a different rule from that laid down in that case, when it says, "When a sheriff makes a false return, he either does so willfully, in which event he commits a fraud, or he does so by accident or mistake, and in either case it falls within the province of equity jurisdiction."

It is a general rule that equity will relieve against fraud or mistake. But the fraud must have been the fraud of the other party to the transaction or to the action, and not simply the fraud of some third person or of the sheriff which was unknown to the other party to the action. And the mistake must have been a mutual mistake of both of the parties to the action or transaction. The mistake of one of the parties alone is not enough.

Stewart v. Stewart, 27 W. Va. 167, is next criticised, and it is said that it was not a bill in equity, but a proceeding under the statute, and that the court "did not discuss the question of equity jurisdiction, but only the effect of the sheriff's return as between the parties in the same case."

This is a misapprehension. It was a bill in equity instituted by the divorced wife against her former husband and his alleged paramour, to set aside a judgment the former husband had confessed in favor of his paramour, on the ground that it was fraudulently contrived to defeat the divorced wife in her attempt to realize on a judgment for alimony rendered in her favor, and upon the further ground that the alleged paramour had caused the judgment in her favor to be

Vol 184 mo—36

levied upon certain land of the former husband. The prayer of the bill was that the judgment in favor of the alleged paramour be set aside as fraudulent, and for a decree subjecting the land to the payment of the former wife's judgment.

The petition alleged that the plaintiff lived in Ohio, and had obtained a judgment against her said divorced husband in that State, and that she had attached the land in West Virginia so conveyed by her divorced husband to his paramour. It further alleged that her divorced husband and his paramour lived in his dwelling house in Beaver county, Pennsylvania, and that both the said divorced husband and his paramour were non-residents of the State of West Virginia. The divorced husband appeared and demurred to the bill. The paramour made default. The cause was heard on March 27, 1883, as the opinion recites, "on the bill and exhibits filed therewith, the former orders made and entered therein, *the process of summons duly executed as to both defendants*" (the italics are added) "the order of attachment issued in said cause and duly-docketed, the levy indorsed on said attachment by the sheriff of Hancock county, and the depositions filed in said cause taken on due notice to said defendants, and was argued by counsel. And the said defendants not having, either jointly or severally, answered said bill, although a rule to answer was awarded against them, the said bill is taken for confessed as to them and each of them." A decree was entered ascertaining the indebtedness of the divorced husband to the plaintiff and requiring him to pay the same. The judgment confessed by the divorced husband in favor of his paramour was set aside so far as it appeared to be a prior lien to that of the plaintiff on the land, and the attached property was ordered to be sold, unless the divorced husband paid the plaintiff's debt within thirty days, and a commissioner was appointed to sell the land and make report, which he did, and made report on June 25, 1883.

On June 25, 1883, the paramour filed a petition in the case, asking the court to rehear the case as to her and to permit her to defend it. Her said petition represented that she was a resident of Beaver county, Pennsylvania; "that said decree was also rendered against petitioner by default, she never having appeared or made defense; that your petitioner was not served with process in said suit in this State, having been merely served with a copy of said process at her residence in said Beaver county, Pennsylvania, which, as she was advised by her counsel, was not such service as was binding upon her, and that she had never had notice of said decree until in June, present, 1883."

This was accompanied by an affidavit of the divorced husband that the land had been sold by the commissioner at sixteen and a third per cent less than its value, and by a written offer of the paramour to bid five per cent more for the land if the commissioner's sale was disapproved and the land ordered to be resold.

The trial court denied the petition, and the husband appealed from the order overruling his demurrer, and the paramour appealed from the order denying her petition for a rehearing.

The Supreme Court first disposed of the points raised by the demurrer of the divorced husband, and then took up the paramour's petition.

Upon this branch of the case the Supreme Court referred to the statute of that State providing for orders of publication, and which also provided for a personal service of a summons, etc., on a non-resident of that State made in the State in which such non-resident lived, and which declared that such personal service should have the same effect as an order of publication. The statute also provided that the return upon such summons, etc., of such personal service,

"must be under oath, and must show the time and place of such service, and that the defendant so served is a non-resident of this State."

The statute further provided that such non-resident, if not served personally with a copy of the judgment, might appear at any time within five years from the date of the judgment, and file a petition for a rehearing, but if served with a copy of the judgment, within five years from its date, he must appear and file his petition for a rehearing within one year after being served with a copy of the judgment.

The statute further provided that in cases of judgments, upon publication, in attachment suits, the defendant might appear as aforesaid and petition for a rehearing, but that if the land had been sold, the subsequent proceedings should not affect the title of any bona fide purchaser of such land, so purchased at the sale under attachment. The statute further provided that this provision, last stated, should not apply to any case in which the petitioner or his decedent was served with a copy of the attachment or with process in the suit more than sixty days before the date of the judgment, or to a case where he appeared and made defense.

After citing the statutory provisions aforesaid the court held that: "The statute did not contemplate a case like this. It speaks of rehearing, where the suit has been heard upon an order of publication, or where the summons has been served upon the party outside of the State, and the statute positively requires that 'in such case the return must be under oath and must show the time and place of such service, and that the defendant so served is a non-resident of this State.' It would be dangerous to permit the record to be contradicted in such a way. If the return had been made as required by the statute, no more difficulty would be apparent, than if the cause was heard on an order of publication. But as it is, the defendant asks to be permitted to contradict the return of the sheriff upon the summons is-

sued in the cause, and this, after the decrees are all entered upon the bill taken for confessed as to such defendant.''

Or otherwise stated, the sheriff's return was that he served the summons upon her personally in the State of West Virginia. It was conceded that she was a resident of Pennsylvania, but that fact would not show upon its face that she was not personally in West Virginia at the time the summons was served upon her. The statute only authorized a petition for rehearing where the judgment was based upon service by publication, or instead of publication, where the summons was personally served upon the non-resident, and in the latter case it required the return to be under oath (manifestly because not made *ex officio* by an officer of the State in which the suit was pending) and to state the time and place of the service and that the defendant was a non-resident.

In that case, the return having been made *ex officio* by the sheriff, and showing service in the State of West Virginia, the statute plainly had no application and the court so held, but as the Supreme Court said (l. c. 179) the petitioner asked to be permitted to contradict the return of the sheriff showing personal service on her in West Virginia.

That case therefore resolved itself into the right of a defendant to contradict the return of the sheriff, independent of the statute, and it was in determining that point that the court examined the law upon that subject, and delivered the able and exhaustive opinion, which is hereinbefore set out.

It is therefore wholly incorrect to say that was a proceeding under the statute of that State, and likewise incorrect to say that the court did not discuss the question of equity jurisdiction.

The case was a suit in equity. The petition of the paramour was for a rehearing in the equity case. The application for leave to contradict the sheriff's return

was made to a court of equity, after judgment. The court in deciding the case was speaking as a court of equity. It is said, however, that the application was in the original case, and therefore it was properly denied, but if it had been in the shape of a separate bill in equity, the case would have been different, and what the court said would then have been pertinent to the question of equity jurisdiction.

The contention is too abstruse for comprehension. The parties were already in a court of equity, and the whole case was before the court, as fully as it could ever be. To deny them relief in equity in the original case in equity, and then to accord them relief in equity in another suit in equity to accomplish the same purpose, would be sheer mockery.

This ought to dispose of the criticism.

Goddard v. Harbour, 56 Kan. 744, is disposed of with the criticism that relief in equity was invoked upon the sole ground that the sheriff's return was false, without alleging any meritorious defense. This is one of the best considered cases in the books, and the whole subject is learnedly discussed, and the rule of the common law adhered to. The Supreme Court considered the question of the jurisdiction of a court of equity to set aside a judgment at law. It never mentioned that relief was denied because no meritorious defense was shown. It will certainly be instructive to that court to learn that the result reached by it was right, because in addition to the charge of falsity of the sheriff's return there was no showing of meritorious defense, but that its reasons for reaching that result are of no consequence, because the case could have been, but was not, decided upon other grounds. It is pertinent in this connection to say, however, that the opinion under review classes Kansas as one of the States that adhere to the doctrine contended for by that opinion, and Chambers v. King Wrought-Iron Bridge Manufactory, 16

Kan. 270, and McNeill v. Edie, 24 Kan. 108, are cited as supporting the claim.

In view of the emphatic utterance of the Supreme Court of that State in Goddard v. Harbour, supra, it is not conceivable how Kansas could be so classed, nor how the earlier cases in that State could, now, if ever, be regarded as affording any support to the claim. In the later case the court said: "Counsel for defendants in error cite Bond v. Wilson, 8 Kan. 228; Starkweather v. Morgan, 15 Id. 274; Chambers v. Bridge Manufactory, 16 Id. 270; McNeill v. Edie, 24 Id. 108, and Jones v. Marshall (Kan. App.), 43 Pac. 840, as supporting the proposition that a sheriff's return may be disputed even in regard to personal service. In the cases heretofore decided by this court the right to controvert the sheriff's return has been expressly limited to matters not coming within his personal knowledge, and the opinions in all the cases, including, also, Mastin v. Gray, 19 Kan. 458, recognize this distinction. We do not approve the rule declared in the opinion in the case of Jones v. Marshall, that a sheriff's return may be controverted as to matters falling within his personal knowledge."

This clearly takes Kansas out from among the States that adhere to the rule contended for by the opinion under review, and shows that the cases cited from that State as supporting that contention, to-wit, Chambers v. King Wrought-Iron Bridge Manufactory, 16 Kan. 270, and McNeill v. Edie, 24 Kan. 108, are not considered by that court as affording any basis for that contention.

That court concluded its decision in Goddard v. Harbour, supra, by saying: "In giving conclusiveness to a sheriff's return as to those matters coming within his personal knowledge, we do no more than give it the same credit as the parts of the record written by the clerk, any of which may be corrected under the direc-

tion of the court when application is duly made, but can not be contradicted by parol testimony.''

Taylor v. Lewis, 2 J. J. Marsh. 400, and Thomas v. Ireland, 88 Ky. 581, are said by the opinion under review here to ''come as near sustaining the contention that a court of equity can not grant relief from a judgment obtained on a false return as any that have ever come under our observation, and yet in neither of those cases was there any effort to show that the parties seeking to set aside the judgments had any defense on the merits or that there was anything in their cases to appeal to the conscience of the chancellor except the bare fact of the false returns.''

Those cases not only come *near* sustaining the doctrine herein stated, but they state the doctrine clearly, forcibly and emphatically. But of these cases it is said, first, that Taylor v. Lewis has been condemned in a note to that case by the editor in 19 Am. Dec. 135, and, second, that both of those cases have been overruled in the later case of Bramlett v. McVey, 91 Ky. 151, and an extensive excerpt from that note is reproduced. It will be interesting to know that the same note also condemns the decision of the Supreme Court of the United States in Walker v. Robbins, 14 How. (U. S.) 584, as it also does the decision of the Supreme Court of Nebraska in Johnson v. Jones, 2 Neb. 126.

Of this condemnation it is only necessary to say that it does not appear who conferred authority upon the editor who wrote that note to ''condemn'' decisions of the Supreme Court of the United States and of the Supreme Courts of Kentucky and Nebraska. But the editor evidently did not know that the Supreme Court of the United States reaffirmed Walker v. Robbins, in Knox Co. v. Harshman, 133 U. S. 152.

Aside from this, however, an examination of that criticism shows that the editor did not go very deeply into the question, nor examine the authorities very carefully, for in support of his statement that the

weight of authority is against the law as announced in the cases so "condemned" by him, he relies principally upon Ridgeway v. Bank, 11 Humph. 525. He also cites other cases from Tennessee, Alabama, Wisconsin, Iowa and the case of Owens v. Ranstead, 22 Ill. 161, which last case is clearly in conflict with the later case of Hunter v. Stoneburner, 92 Ill. 75, as hereinbefore pointed out.

The courts of the other States referred to proceed upon the theory that the return of the sheriff is only prima facie evidence and hence can be corrected, by motion, in the original case before judgment. Or else they treat a false return as a fraudulent return, and illogically hold the innocent plaintiff responsible for the act of the sheriff. For this reason those courts logically hold that it can be impeached in equity after the judgment. But the editor did not cite, if he knew, the many cases from other States (Missouri among the number) that hold that the sheriff's return is conclusive between the parties to the original case before judgment and therefore logically and necessarily hold that it can not be attacked in equity after judgment, except for fraud, in which the party benefited by the judgment participated, or except in a direct suit against the sheriff.

This is the true test and basis of the different rules adopted in the several States, and when this test is borne in mind the whole subject is easy of comprehension. Those States that follow the common law rule that the sheriff's return is conclusive in the original case before judgment, hold that the return is impervious to attack in equity after judgment except for some fraud in the very concoction of the judgment (and the falsity of the return does not constitute such a fraud), in which fraud the party benefited by the judgment participated, or except in a direct suit against the sheriff. And those States that hold that the return is only prima facie evidence, permit the return to be impeached by

motion in the original action before judgment or by a bill in equity after judgment.

This is the logic of the two lines of decisions. Missouri, in an unbroken line of cases from Hallowell v. Page, 24 Mo. 590, to Feurt v. Caster, 174 Mo. l. c. 297, has always held that the return is conclusive in the original case, before judgment, and in the only case, before this case, that has come before it that directly involved the question (McClanahan v. West, 100 Mo. 309) has held that the return could not be impeached in equity, after judgment. And if the rule thus announced is to be changed in this case, as to attacks in equity after judgment, this court would have not only to overrule McClanahan v. West, but also all the prior decisions in this State that hold that the return can not be impeached, by motion, in the original case, before judgment, and thus to abandon the common law rule and take sides with those States that hold contrary to the common law rule. For it would be an incongruous state of the law to hold that the return was conclusive, in the original case, before judgment, but was only prima facie in an attack upon it, in equity, after judgment. As hereinbefore pointed out, under such a rule, a defendant could stand aside until after final judgment, and could then wait until his property had been sold under execution and his debt paid out of the proceeds, and could then come in and recover his property by a bill in equity upon a simple showing of the falsity of the return and a meritorious defense. Unless this court should be satisfied that the wisdom of the common law and of all the judges that have heretofore constituted this court has been at fault, it could not assume this position.

But it is said that the Kentucky cases cited have been overruled by the later case of Bramlett v. Mc-Vey, 91 Ky. 151. This is not an accurate statement of the matter. The earlier cases have not been overruled. Bramlett v. McVey, 91 Ky. 151, was a proceeding under

a statute of Kentucky that was enacted after the prior cases had been decided, which permitted a party to impeach the sheriff's return "where either the party benefited by the judgment has fraudulently procured return of service, or where the officer has made it by mistake." And the court referred to Taylor v. Lewis, 2 J. J. Marsh. 400, and Shoffet v. Menifee, 4 Dana 150, and said that they held that "it was incompetent for a party to aver or prove the falsity of a return made by a proper officer in a collateral mode without a direct proceeding against the officer himself." And then added: "But the statute we have quoted was evidently intended, and does, in terms, authorize an officer's return to be put in question where the conditions therein mentioned exist." Then the court proceeded to point out that the case at bar was an attack upon the sheriff's return in a criminal case to the effect that he had executed the *capias,* when he had not done so, upon which return a judgment was entered, and an execution of *capias pro fine* was issued, under which the sheriff was about to seize the body of the plaintiff, and the court held that the rule laid down in the prior adjudications in civil cases had no application to criminal cases. And for these two reasons the prior cases were not followed.

It, therefore, appears that the rule announced by the courts in Kentucky can no longer be classed on either side of the principles under discussion, because of the statute of that State.

Of Johnson v. Jones, 2 Neb. 126, it is said that the result reached was proper, first, because the plaintiff broke down in his proof that the return was false, and, second, because no meritorious defense was shown. The court called attention to the failure of proof aforesaid, and said, "This might be sufficient upon this branch of the case; but, as other and important questions were raised on the argument, they will be noticed." The court then took up the questions whether the return of the sheriff was conclusive and whether it

could be attacked in equity, and after a full discussion of the subject, with the citation of many cases, held that the return was conclusive and could not be impeached in equity, and further held that extrinsic evidence was inadmissible to contradict the return, in equity (as was held by this court in McClanahan v. West, supra), and cited cases supporting that view, and finally reversed the judgment of the lower court, which awarded the relief asked, without remanding the case. The opinion was written by Chief Justice MASON.

But it is said that in a later case, James v. Howell, 37 Neb. 320, that court held that relief in equity would be granted if in addition to showing that the return was false the plaintiff showed that he had a meritorious defense to the original action.

It is true that case so holds. But it is likewise true that Johnson v. Jones, supra, was not referred to, and was not discussed or expressly overruled. And it is likewise true that the opinion was written by one of the commissioners of that court, and that no extended or thorough examination of the authorities or of the underlying principles, was made, and that the whole discussion of the law of the case does not cover more than a half of one page of the report.

It is interesting to note, however, that in Wilson v. Shipman, 34 Neb. 573, the case of Johnson v. Jones, 2 Neb. 133, was cited by counsel, but the court ignored it entirely, although relief was asked solely on the ground that the return was false. The court held "that the jurisdictional facts alleged in the record of a judgment of a court of inferior jurisdiction may be controverted." And then held that the evidence was insufficient to prove the falsity of the return. But the judgment was reversed and the action dismissed for this reason, and also because no meritorious defense was alleged or proved.

It is, therefore, proper to leave to the Supreme Court of that State the determination of the question

whether it will adhere to the exhaustive decision of Chief Justice MASON, in Johnson v. Jones, or whether it will regard it as inferentially overruled by the commissioner's opinion aforesaid, in James v. Howell, or by the decision in Wilson v. Shipman.

Of Gardner v. Jenkins, 14 Md. 58, it is said that the bill proceeded solely upon the ground that the original action was prosecuted in the city of Baltimore, while the defendant therein resided in the county of Baltimore and was served in the county, and that he admitted he owed a part of the amount for which judgment was rendered, but did not offer to pay what he owed.

This is not a full statement of the case. The plaintiff further alleged that when the officer attempted to serve him he informed the officer that he lived in the county and was not liable to be sued in the city, and that the officer told him "he would so report, and that complainant need trouble himself no further on the subject," and that, relying upon this statement of the officer, he paid no further attention to the matter, but supposed that the writ would be returned "*non est.*" The bill charged that the officer returned the writ as served, and asked that the judgment be vacated for this fraud of the officer. The court said: "The bill does not allege any *fraud* on the part of the appellant" (who was the plaintiff in the original action) "but merely against the deputy of the sheriff of Baltimore City. . . . 'Courts of chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to relieve from substantial injury or gross injustice, that its high and extraordinary power of interference by injunction is ever resorted to.' " The court then said that as the bill contained no offer to pay what was admitted to be due, relief would be denied, and finally added: "Besides these objections, the party had a right to proceed under the Act of 1787, chapter 9, and he availed himself of it. The judgment of the

court being against him he is concluded thereby.'' Accordingly, relief in equity was denied him.

The act referred to seems to have been a statutory remedy against the sheriff on his bond for a false return, although the act itself is not accessible. If it is as it appears to be, then the case is valuable in the case at bar as showing that when a defendant who has been wronged by the sheriff's return pursues his remedy against the sheriff, he can not afterwards be heard in equity to set aside the judgment based upon such a return, but must stand by his election.

At any rate the criticism fails to impair what the court said with respect to the necessity of alleging fraud on the part of the plaintiff in the original action.

The criticism of Preston v. Kindrick, 94 Va. 760, is that the rights of third innocent persons had intervened, that is, that the property had been purchased at the foreclosure sale by the plaintiff and had been sold by him to another person, and therefore it is reasoned that what is said in that case upon the right to equitable relief, is of no consequence, in this discussion.

An examination of that case, however, shows that the relief was asked upon the ground that the return was false and that knowing it to be false, the plaintiff took advantage of it, and obtained judgment. This subject is very thoroughly considered and the cases analyzed, as is also the doctrine laid down in Freeman on Judgments, section 495 (which is so much relied on in the opinion under review here), and the distinction is pointed out by that court between the rule that obtains at common law and in the States herein referred to, that the return is conclusive both before judgment and afterwards in equity, except for fraud on the part of the plaintiff in the original action, and the rule that obtains in other States where the return is held to be only prima facie evidence, and hence is subject to attack, both before and after judgment, and the former is declared by the Virginia court to be the better doc-

trine, and the case is decided upon that principle. The criticism thereof in no wise impairs the force of that case.

Under such a state of adjudication in other jurisdictions it is not conceivable how it can be said that not one of those cases can be said to deny jurisdiction in equity in a case like the one at bar.

## IX.

The opinion under review here quotes from Story's Equity Jurisprudence, Pomeroy's Equity Jurisprudence, Freeman on Judgments, Black on Judgments, High on Injunctions, and the American and English Encyclopedia of Law, and then cites forty-six cases from nineteen States, and concludes that the weight of authority sustains the contention that the rule is that a court of equity will relieve against a judgment at law, where the sheriff's return is false, if the defendant had a meritorious defense to the action, without any allegation or proof of fraud upon the part of the plaintiff in the judgment.

Of the nineteen States so classified it has already been shown that such is not the rule in Illinois, Indiana or Kansas, but that the doctrine herein announced is the rule that obtains in those jurisdictions. These three States must therefore be taken out of the list, which would leave sixteen States to be considered.

It has also been herein shown that the courts of Kentucky followed the rule herein announced, until a statute was passed which permitted the judgment to be set aside in equity not only for the fraud of the plaintiff therein in procuring the return, but also for the mistake of the officer in making the return. This takes Kentucky out of the list of nineteen States, and leaves it in a statutory class to itself. This leaves fifteen States to be considered.

The fifteen States remaining are, Alabama, Arkansas, California, Colorado, Connecticut, Iowa, Minne-

sota, Mississippi, Montana, Pennsylvania, Rhode Island, Tennessee, Texas and Wisconsin and possibly Nebraska.

Of these, the following hold that it is only necessary to show the falsity of the return, and that no showing of a meritorious defense need be made: Connecticut (Watson v. Watson, 6 Conn. 334, and Jeffery v. Fitch, 46 Conn. 601); Minnesota (Magin v. Lamb, 43 Minn. 80); Tennessee (Ridgeway v. Bank, 11 Humph. 523; Ingle v. McCurry, 1 Heisk. 26); Alabama (Stubbs v. Leavitt, 30 Ala. 352; though in the case of Rice v. Tobias, 89 Ala. 214, the element of meritorious defense was held to be necessary, in addition to the falsity of the return); Mississippi (Quarles v. Hiern, 70 Miss. 891; but see Walker v. Gilbert, Freeman's Ch. Rep. 85, where it was held necessary to also show a meritorious defense); Wisconsin (Pollard v. Wegener, 13 Wis. 569. But in this connection it is proper to note that the case of Johnson v. Coleman, 23 Wis. 452, cited in the opinion under review, proceeded upon the ground that relief in equity can be obtained only for fraud of the plaintiff in the procuring of the judgment. In that case it was alleged and shown that the plaintiff knew that the summons had not been served upon the defendant, yet he took advantage of the false return); Iowa (Newcomb v. Dewey, 27 Iowa 381; Ins. Co. v. Waterhouse, 78 Iowa 674); Oregon (Huntington v. Crouter, 33 Oregon 408); Texas (Cooke v. Burnham, 32 Tex. 129; Glass v. Smith, 66 Tex. 548).

In the following cases it was held that in order to obtain relief in equity it was necessary to show not only that the return was false, but also that the defendant had a meritorious defense to the action: Arkansas (State v. Hill, 50 Ark. 458. At first it was held in Arkansas that the relief would be granted upon a simple showing that the return was false, Ryan v. Boyd, 33 Ark. 778, but in State v. Hill, 50 Ark. 458, it was held

that this was not enough and that a meritorious defense must also be shown); California (Gregory v. Ford, 14 Cal. 138. But in this connection the case of Martin v. Parsons, 49 Cal. 94, should be read, where relief was granted upon the sole ground that the return was false, without showing a meritorious defense); Colorado (Wilson v. Hawthorne, 14 Colo. 530); Montana (Hauswirth v. Sullivan, 6 Mont. 203); Nebraska (James v. Howell, 37 Neb. 320; Wilson v. Shipman, 34 Neb. 573; see Johnson v. Jones, 2 Neb. 126); and Pennsylvania (Miller v. Gorman, 38 Pa. St. 309).

From this it appears that in nine States the rule is that equity will grant relief against a judgment at law, upon the sole ground that the sheriff's return is false, without any showing of a meritorious defense, while in six States it is held to be necessary to show a meritorious defense in addition to the falsity of the return. To this must be added the text-writers referred to.

On the other hand, it is held in the following States that equity will not restrain the enforcement of a judgment, regular on its face, unless it was procured by fraud and the plaintiff in the action participated in the fraud: Georgia, Illinois, Indiana, New Hampshire, West Virginia, Kansas, Maryland, Virginia, Kentucky (until changed by statute) and Missouri.

In addition to the decisions of these States, the decisions of the Supreme Court of the United States and the English cases must be added.

Upon this showing the weight of authority cannot be said to be in favor of the rule contended for in the opinion under review.

The sum of the whole matter is this, that in those States that hold that equity will interfere upon a showing that the return is false, or that it is false and that the defendant therein had a meritorious defense, the

ruling is based upon the ground that the return of the sheriff is only prima facie evidence, and hence may be attacked by motion, before judgment, in the original case, or in equity, after judgment.

Whereas in those States wherein relief in equity is granted only where fraud in the very concoction of the judgment is shown, the English rule is followed, that the return of the sheriff is conclusive (except when attacked for fraud or in a direct suit against the sheriff) both before judgment, in the original case, and after judgment, in equity.

Missouri has always held that the return is conclusive before judgment in the original case, and in the only case that has come before this court (McClanahan v. West), it was held to be conclusive after judgment, even in equity.

The question therefore is not which side of the controversy Missouri will take, but the real question is whether this State will recede from its previous course, and overrule all its prior adjudications. It can not take the position contended for in the opinion under review without overruling McClanahan v. West, supra, and also all the cases from Hallowell v. Page, 24 Mo. 590, to Feurt v. Caster, 174 Mo. l. c. 297. For it would be incongruous, illogical and unscientific to hold that the return was conclusive in the original action, before judgment, but that it was only prima facie evidence after judgment in a suit in equity.

As was well said by the Supreme Court of West Virginia in Stewart v. Stewart, 27 W. Va. 167, "we see no reason for departing from the rule of the common law. If it is thought wise to permit the return of a sheriff on mesne or final process in any case, where the suit is not against him or his sureties for a false return, to be contradicted, the Legislature should furnish the remedy. We think the rule of the common law was founded in reason."

As was said by the Supreme Court of Kansas, in

Goddard v. Harbour, 56 Kans. 744, "much can be said by way of argument for and against the rule which makes the sheriff's return conclusive. We deem it the safer course to yield our assent to a rule which has met with the approbation of so large a majority of the courts, and incline to the opinion that the weight of reason rests with that of authority."

And as was said by the Supreme Court of Virginia, in Preston v. Kindrick, 94 Va. 760, "the better doctrine" is that the return is conclusive, except when attacked for fraud in which the plaintiff participated, or in a suit against the sheriff.

## X.

The force of the decision of this court, in McClanahan v. West, as applicable to the subject under discussion, is sought to be broken, by the claim that the suit in equity was not predicated upon an allegation that the return was false, but only upon the proposition that the record was silent as to service.

This is a total misapprehension, as is shown by the language of the opinion, which is: "But it is unnecessary to rule the point now" (the point was as to attacking a judgment collaterally for fraud in its very concoction) "for the obvious reason that there is no tendency in the testimony adduced by plaintiffs to show fraud in the proceeding or concoction of the judgment, nor of any connection of the defendants therewith. This being the case, parol evidence was wholly out of place to show that the plaintiff had not been served with process in the partition suit. And this is true notwithstanding that the judgment in that suit is silent as to the acquisition of jurisdiction by service of process upon her."

This conclusively shows that parol evidence had been introduced to show that she had never been served with process, and that she did not rely upon

the silence of the record as to service. It is further shown by the opinion that parol evidence was admitted to show that the process was lost and that it showed personal service upon her, and this court said that while parol evidence was admissible to show the contents of the lost process and the return thereon, yet parol evidence was wholly inadmissible to contradict such return on the presumption of service arising where the record is silent as to service.

The attempt to impair the force of this case has therefore failed.

It is material here to say, however, that this case has another important bearing on the case at bar. It is admitted in the opinion under review that if a third person had purchased the property at the sale under the original judgment of Judd v. Smoot, equity would not interfere, but that as Judd purchased it, the judgment and sale are open to attack in equity—notwithstanding it is conceded that Judd was an innocent party, was in Kentucky all the time, and had no knowledge or suspicion that the return was false.

In McClanahan v. West, the opinion shows that West was a party plaintiff in the original suit, and that he purchased the property at the sale under the judgment. He afterwards died and the suit in equity was against his heirs, who, of course, stood in his shoes and had no better right or equity than he had.

Yet the return was held conclusive and parol evidence held to be wholly inadmissible to contradict it, and relief was denied because no fraud was shown in the very concoction of the judgment, and the plaintiff in the judgment was guilty of no fraud.

This disposes of the contention that the rule is that third innocent parties who buy at the judicial sale are protected by the judgment, but that an innocent party to the suit who purchases at the sale is not protected; and this also disposes of the case at bar.

## XI.

It is said in the opinion under review, and in some of the cases therein cited, that the question of service of process is a question of fact, and that it is not only intolerable but also against the constitutional guaranty that no person shall be deprived of life, liberty or property without due process of law, that a judgment rendered upon a return of process that in fact was not true, should be allowed to stand, and that if the defendant did not know of the false return until after judgment, and, therefore, could not question it before judgment, it would be unconscionable to deny relief in equity.

On its face this argument sounds very plausible, but upon analysis the infirmity of the contention is at once apparent.

If the contention is true, it is passing strange that the Supreme Court of the United States did not discover it in the cases herein referred to when it denied relief in equity where the direct question was involved.

But the opinion under review here, seeks to "hoist" the writer of this opinion "on his own petard" by citing the opinion in the case of Hunt v. Searcy, 167 Mo. 158, which was written by the writer hereof, as authority for the position contended for.

This is a total misconception of what that case decides. In that case there was no question of a false return involved, nor was there any pretense that any process or notice was ever attempted to be issued to or served upon the person whose sanity was to be inquired into, but on the contrary it was there claimed that the statute of this State expressly authorized the inquiry *de lunatico* without any notice to such person. It was with such a statute that the opinion in that case was dealing. The difference between that and the case at bar is apparent.

Of course it is conceded by all courts that no court

has jurisdiction to render a judgment in any case unless it has jurisdiction both of the person and of the subject-matter.

But neither in this nor in any of the cases contemplated by the rule herein announced was there an absence of a showing upon the face of the record that the defendant had notice. They all proceed upon the theory that the defendant appears by the face of the record to have had notice and that it was served upon him in the manner and by the officer provided by law. This constitutes due process of law within the meaning of the State and Federal Constitutions.

The vital question in every case is, did the defendant have notice? The difference between the cases is only as to the method of establishing the fact that he had such notice. The one rule is that the sheriff's return is the only proper evidence of that fact, and the other rule is that the fact is always an open one to be determined from the parol evidence adduced by the parties. The former rule gives full value and force to judicial proceedings. The latter rule deprives all judgments of their integrity and makes them impossible of being enforced, for no one would buy at a judicial sale when he might thereafter be deprived of the property by a decree in equity setting aside the sale and judgment.

## XII.

On the facts of the case at bar it is said that Mrs. Smoot is an innocent party and had a meritorious defense, and that while Judd was innocent of all fraud, the real defendants herein, Brand and Jackson, are not innocent purchasers, but purchased with knowledge that the return of the sheriff in the original case was false.

The process employed to show that Brand and Jackson had such knowledge is that before they bought at the partition sale they consulted Mr. Wray, who

was also Judd's attorney, and that as attorney for Judd Mr. Wray knew that the return was false, and therefore Brand and Jackson are charged with such knowledge.

This conclusion is erroneous in law and in fact. In law, because a principal is only charged with notice acquired by his agent while the agent was engaged in the business of the principal. [Merchant's Natl. Bank v. Lovitt, 114 Mo. 519; Traber v. Hicks, 131 Mo. 180; Donham v. Hahn, 127 Mo. 439.] To affect the principal, the knowledge possessed by the agent must have come to the agent during his agency, and not after ·or before. [Anderson v. Volmer, 83 Mo. 403.]

And erroneous in fact, because neither Mr. Wray nor any other member of his law firm knew or had any suspicion at the time Brand and Jackson consulted them about buying at the partition sale, that the sheriff's return as to Mrs. Smoot was untrue.

On the contrary, Mr. Wray testified in this case that at that time no one had ever intimated such a thing to him, and he never heard of it until this suit was brought, which was nearly four years after the original judgment was rendered, and nearly a year after Brand and Jackson had consulted him and had bought at the partition sale.

Instead of Mr. Wray having any such knowledge at the time Brand and Jackson consulted him, the record shows that after the original judgment was rendered, which was on September 18, 1891, and after an execution had been issued thereon, which was on January 20, 1892, Mrs. Smoot came to see him, and sent her attorney to see him, to get an extension of time in which to pay the judgment, with the result that he gave her twelve months in which to do so, and that neither at that time nor during the said twelve months, nor when she filed her answer in the partition suit on February 23, 1894, nor at any time before this suit was begun on August 18, 1895, did she ever intimate that there

was any question about the truth of the sheriff's return.

It cannot, therefore, be fairly said that Brand and Jackson are charged with notice of the falsity of the return by reason of any knowledge Mr. Wray had of that fact or otherwise.

The sum of the whole case is that Brand and Jackson are innocent third persons who purchased at a judicial sale under a judgment of a court of competent jurisdiction whose record showed service of process upon Mrs. Smoot. Judd and his attorneys are entirely innocent parties and are not even charged with being parties to or having knowledge of the falsity of the return. Mrs. Smoot, on the contrary, admits that she knew as early as 1893 (Mr. Wray and her attorney, Mr. Cole, say she knew of it before the sale of the land under the execution upon the original judgment in January, 1892, when it was agreed that Judd should buy the property at the sale and give her twelve months in which to redeem), that the land had been sold under the judgment, yet she never mentioned at that time, nor when she filed her answer in the partition suit on February 23, 1894, nor until this suit was filed in August, 1895, that the sheriff's return was false.

As between Mrs. Smoot on the one side and Brand and Jackson on the other there is no room for controversy that Brand and Jackson are the innocent parties, and that Mrs. Smoot's conduct in waiting for over two years after she knew that the judgment had been rendered upon a return of the sheriff showing personal service upon her without challenging that return, has caused Brand and Jackson to spend their money in the purchase of the land, and therefore there is no equity in her case.

## XIII.

This only leaves for consideration the contention that when Mrs. Smoot sued the sheriff for false return,

the jury gave her only nominal damages, and hence as she has failed to receive adequate compensation at law, equity should give her relief by taking the property away from Brand and Jackson and restoring it to her.

This same argument might be made as to every judgment at law when a plaintiff recovers only nominal damages, or where he or a chancellor thinks the amount recovered at law was not full compensation—for it is said that the amount recovered at law should be credited on the sum the chancellor may think would be proper compensation.

If such a rule is to be established it would be better to abolish juries and courts of law at once and throw everything into equity.

Courts of law will have to prove themselves greater failures than this record shows them to be before any such change, or any such supervision over their judgments by courts of equity, will be tolerated or looked upon with patience by the people, who have always, or at least since the days of Magna Charta, jealously guarded the right of trial by jury.

This is a case of misplaced sympathy for Mrs. Smoot on the part of the learned judge who wrote the opinion under review here. Instead of Mrs. Smoot being a grievously wronged person, she has been treated with the greatest consideration and leniency. She mortgaged her property to secure the note in question, and at her request Judd released the mortgage. The note on which the judgment was rendered was dated April 15, 1887, and was payable one day after date. Judd waited until four years after the note was due before he sued on it. After the judgment he agreed with her to buy in the property at the execution sale and to give her twelve months to redeem it. He waited nearly two years for her to redeem, and when she did nothing, he filed the partition suit. The land was not sold in partition for eleven months after the partition

suit was instituted.  After it was so sold Mrs. Smoot waited nearly a year before she brought this suit. Thus she had seven years and a half in which to pay the debt before Brand and Jackson purchased it.  During all this time she paid nothing, and for four years after the original judgment was entered she never breathed to Judd or his attorneys or to her attorney or Brand and Jackson that there was any question about the truth of the sheriff's return.  And even now, it appears by the finding of two chancellors who have tried this cause in the lower court, that although the original return was not strictly true in showing that she was personally served, nevertheless as found by those chancellors and also by the law court that permitted the return to be amended and by the Kansas City Court of Appeals that affirmed the judgment in that regard,— it now appears that Mrs. Smoot had notice of the original suit, by the summons for her having been left with a member of her family—her husband—at her usual place of abode, which was a good service on her under the statute of this State.

Upon such a showing there is no merit or equity in her bill and the trial court did right in dismissing it, and the judgment is affirmed. *Robinson, C. J.,* concurs; *Brace, J.,* concurs in paragraphs 2, 4, 5, 6, 12, and 13, and in the result; *Burgess, J.,* concurs *in toto; Gantt* and *Fox, JJ.,* concur in the result for the reasons expressed in the separate opinion of *Fox, J.; Valliant, J.,* dissents in an opinion filed by him.

### DISSENTING OPINION.

VALLIANT, J.—In this suit the plaintiff invokes the jurisdiction of a court of equity to grant her relief from a judgment rendered against her in a court of law on the ground that she had a good and lawful defense to the action as was well known to the plaintiff in that action, but was afforded no opportunity to make

that defense because, although the sheriff had returned the writ as personally served on her, yet the return was false, and that she had no notice of the suit until after the adjournment of the term of the court at which the judgment was rendered. She alleges in her petition that under execution on that judgment her undivided interest in certain land was sold and bought by the plaintiff in execution, that he thereupon instituted a suit for partition against the owners of the other undivided interests, which suit resulted in a decree under which there was a sale of the land by the sheriff at which the defendants Brand and Jackson became the purchasers, each of a separate part, and that these two defendants bought with full knowledge of the plaintiff's claim.

When this cause was here on the former appeal this court said: "There are numerous decisions in this State in which it is held that the sheriff's return on the writ is conclusive as between the parties to the suit. [Heath v. Railroad, 83 Mo. 617; Decker v. Armstrong, 87 Mo. 316; State ex rel. v. Finn, 100 Mo. 429.] But that well-established principle of law has no application in a suit in equity to set aside the judgment founded on the return on the equitable ground of fraud, accident or mistake. . . . It has frequently been held in other States that a judgment by default rendered on a false return will be set aside or its execution enjoined in a court of equity. [Citing authorities.] Indeed, it would be so contrary to right and justice to allow a judgment obtained by such means to stand that it is strange there could be any question of the power and duty of a court of conscience in the premises. The Constitution of Missouri ordains that 'no person shall be deprived of life, liberty or property without due process of law.' A more flagrant violation of this constitutional provision cannot be conceived than to take one's property by means of a false return of the process. But the root of equity

jurisdiction in such a case is planted deeper than in even a written Constitution; it is planted in that enlightened sense of right and justice that lies at the foundation of all our laws and finds its chief expression in a court of equity.'' [Smoot v. Judd, 161 Mo. 673.]

But in the majority opinion on this second appeal the court takes back what we then said, and now says that not only can the judgment not be attacked collaterally by showing that the sheriff's return was false, but also that however flagrant the wrong and injustice may be, there is no power in a court of equity to afford the injured party any relief—his only comfort must be found in a suit on the sheriff's bond. And if it should so happen that that bond is insolvent, or if (as the evidence in the case at bar seems to show was the fate of this plaintiff in her vain endeavor to obtain satisfaction in that mode) the plaintiff's cry to a court of law for justice should be answered with the mockery of a verdict for one cent damages, still a court of equity must confess its inability to restore the plaintiff her property of which she was thus deprived, although it is yet in the hands of men who took it with full knowledge that it was taken from her on a judgment predicated on a false return, on a cause of action against which she had a valid legal defense, but which she had no opportunity to interpose. In my opinion this is the first court in the land to lay down such a doctrine.

No one will go further than the writer of this opinion in upholding the integrity of judicial proceedings. We must recognize that the forms of our law and procedure are human and therefore not perfect, that the best we can do is to lay down certain general principles and prescribe certain general procedure and that in their application and use we sometimes fall short of doing complete justice, but that it is better for the general weal to adhere to those principles and

forms of procedure than to attempt to make a law for each case as it arises. Therefore, we say that the record of a court of general jurisdiction imports absolute verity in all its parts, including the sheriff's return on the original process, which is a part of the record. If a judgment in such a court is rendered on a return of due service of the summons, and execution issues, and property of defendant is sold thereunder to an innocent third party, or if sold to the plaintiff in execution and by him conveyed to an innocent purchaser for value, the policy of our law demands that a title so acquired shall be upheld, even though the return was false and the defendant had no notice of the suit. The injury in that case done is the result of our law being less than perfect, and the only redress we can offer the injured one is a suit on the sheriff's bond, which may or may not result in any satisfaction. But where the defendant's property is yet in the hands of one who acquired it with knowledge that the judgment was obtained by a false return, it is no impairment of the integrity of the judicial proceeding to require him, after the truth has been duly ascertained in a court of equity, to restore the property to its rightful owner.

One who comes into a court of equity asking relief must show not only that his technical legal rights have been violated, but he must show that right and justice are on his side, and his case must be such as to arouse the conscience of the chancellor in his favor.

Therefore, even if he should come saying that a money judgment had been rendered against him on a false return and that he had no notice of the suit until the term had passed, if he had nothing more to plead, the chancellor would turn him away, because he omits to say that he did not owe the debt or any part of it and omits to offer to pay what, if any, he justly owes. In such case, even if it appeared that the false return had been induced by the fraud of the plaintiff, there are some authorities which question the right to equit-

able relief against the judgment unless it should also be made to appear that the defendant had a meritorious defense, or unless he offered to pay what he owed. Courts of equity do not sit to correct irregularities in legal proceedings, or give relief when no equity demands it. In such case the party is left to his remedy, if any, at law.

The jurisdiction of a court of equity to grant relief against a judgment at law obtained on a false return, in no respect impairs the rule that the sheriff's return is conclusive as between the parties to the suit and their privies and in no respect endangers the rights of innocent third parties bottomed on the judgment.

The sheriff's return is a part of the record, as much so as the judgment of the court itself, and is as impervious to attack as the judgment, and while it stands no one will be heard to say that it is not true in fact, except in a suit against the sheriff or on his bond, which right of action the statute gives. We frequently meet, in discussions of the sheriff's return, expressions to the effect that its truth can be disputed only in an action against the sheriff for a false return, but those expressions are in reference to the effect to be given the return as it affects the validity of the judgment while it stands in law; they are not found in discussions of the question of equity jurisdiction in such case.

In suits in equity to set aside judgments alleged to have been obtained by fraud we have often said to authorize such a decree it must appear that there was fraud in the very act of obtaining the judgment, as distinguished from fraud in the cause of action on which the judgment was founded. Even though it be alleged that the judgment was obtained by the fraudulent procurement of perjured testimony that alone will not justify a court of equity in interposing its authority, for the reason that the truth or falsity of the evidence was one of the questions for the jury or court which

tried the case to consider, and its verdict is not subject to review in a court of equity.

But whilst it is true that when a judgment is attacked for fraud in a court of equity, the court will consider only the fraud that is shown in the concoction or obtaining of the judgment, yet fraud is not the only ground on which a court of equity has jurisdiction to set aside a judgment or enjoin its execution.

One of the most illustrious expounders of equity jurisprudence that has ever written on the subject thus states the rule: "In regard to injunctions after a judgment at law it may be stated as a general principle that any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorize a court of equity to interfere by injunction, to restrain the adverse party from availing himself of such judgment." [2 Story, Eq. Jur. (13 Ed.), sec. 887.] The same is said substantially in Pomeroy, Eq. Jur., sec. 1364.

The law is thus stated in 2 Freeman on Judgments (4 Ed.), sec. 495: "A judgment pronounced without service of process, actual or constructive, and without the defendant's knowledge that a court had been asked to adjudicate upon his rights, is regarded with such disfavor at law that a variety of motions, writs and proceedings are there provided to overthrow it; and in many courts it is at all times and upon all occasions liable to be entirely disregarded upon having its jurisdictional infirmity exposed. But proceedings in equity are peculiarly appropriate for the exposure of this infirmity. They permit of the formation of issues upon the question of service of process, and of the trial of those issues, after full opportunity has been given to those who seek to sustain as well as to those who seek

to avoid the judgment. If at such trial it satisfactorily appears that the defendant was not summoned, and had no notice of the suit, a sufficient excuse is shown for his neglect to defend, and equity will not allow the judgment, if unjust, to be used against him, no matter what jurisdictional recitals it contains. . . . The only cases in which there can be any reasonable doubt about granting relief in equity for want of jurisdiction are those in which such want either appears on the face of the record or may at all times be shown in any and every collateral proceeding. In such cases there are courts in which the remedy at law is deemed adequate, and relief in equity is denied for that reason.''

The law-writer, then turning to the argument that a suit on the sheriff's bond is the remedy supplied by law, in the same section says: ''But the obvious and conclusive answer to this line of argument is thus briefly stated in the opinion of the Supreme Court of Tennessee: 'The action for a false return is an inadequate remedy for such an injury; for it might be that after a *ruinous sacrifice* suffered in the payment of a judgment so recovered, and the delay and expense of litigation with the officer who made the false return, he might be unable to make the proper indemnity or succeed in evading his liability.' '' [Citing Ridgeway v. Bank, 11 Humph. 523.]

But what better illustration could be given of the inadequacy of this remedy than is afforded by the facts of the case at bar? In this case, if the plaintiff's story is true, her land has been taken and sold to satisfy a debt for which she was under no legal liability by means of a judgment rendered against her on a false return and when she sues the sheriff and proves her case, the court turns her off with a judgment for one cent damages. Is it possible that a court of conscience could listen with patience to the plea that the law afforded her an adequate remedy?

In 1 Black on Judgments (2 Ed.), section 377, the

law is thus stated: "Equity may vacate or enjoin the judgment of a court of law, when it is shown to be unjust and that the court rendering it never had jurisdiction of the person of the defendant, although assuming it, in consequence of a false return of service of the sheriff or other officer. . . . It should be remarked that there is a line of decisions wherein the application of the rule above stated is materially restricted. These cases hold that equity should not grant relief unless the false return of service was procured or induced by the plaintiff, or unless the latter can be in some way connected with the deception, thus linking the case supposed with the category of those wherein the defendant was prevented from setting up his defense by the trickery or fraud of his adversary. The analogy here presented is plausible, but deceptive. For in case the plaintiff is in no fault, and the officer is alone to blame for the false return, these decisions can suggest no remedy except that the defendant should pay the judgment and then bring his action against the officer. Practically, however, this remedy must often be illusory. And at its best, it involves a circuity and remoteness of obtaining redress which is foreign to the spirit of equity. But although the main rule for cases of this sort may be regarded as generally well settled, there is a material difference of opinion as to whether the relief will be granted when there still exists a complete and adequate remedy in the original suit. Numerous respectable authorities hold that it should be granted; others, that it should be refused. But at all events, before equity will interpose by injunction in a case of this description, it must be averred and proved that the defendant has a meritorious defense, or at least something more than the mere barren right of being permitted to defend."

In a note the author cites a large number of cases sustaining the text that equity has jurisdiction in such

cases, from Pennsylvania, California, Alabama, Mississippi, Tennessee, Arkansas, Illinois, Iowa, Wisconsin, Rhode Island, Kentucky, and Colorado, some of which I will hereinafter refer to.

In 16 Am. and Eng. Ency. of Law (2 Ed.), 388, it is said: "The weight of authority seems to be that if the process is returned executed upon the defendant at law, and was not in fact executed, and judgment was rendered without appearance or opportunity to defend, chancery has power to enjoin the judgment, if it be alleged and proved that the party aggrieved has a good defense to the action." In support of the text the author cites cases from the States above-named and also Kansas, Montana and Nebraska.

High on Injunctions (3 Ed.), vol. 1, sec. 222, says: "Where judgment has been rendered against defendant without notice and without appearance or defense on his part, the sheriff having made a false return of service, equity will relieve against the judgment on the ground that the circumstances rendering it void are extrinsic to the judgment, and a court of law is, therefore, powerless to arrest its execution."

If there is any text-writer on this subject who has written to the contrary of the rule of equity jurisdiction above stated the book has not come to my notice. And whilst the law-writers above named say that there are decisions looking to the contrary, yet so far as such cases referred to have come within the reach of the writer of this opinion not one of them goes so far as to hold that equity has no jurisdiction to grant relief against a judgment obtained on a false return when besides the false return the plaintiff showed that he had a meritorious defense to the suit, no intervening equities of innocent third parties appearing.

Let us now turn to the decisions which are thought to sustain the proposition that a court of equity has no power to relieve a person against an unjust judgment obtained on a false return. In those decisions we shall

find words to that effect, but the meaning of those words must be bounded by the facts of the case to which they were applied.

The Supreme Court of the United States is in the list of the courts referred to as so holding and that court is so classed by reason of its decisions in Walker v. Robbins, 14 How. (55 U. S.) 584, and Knox County v. Harshman, 133 U. S. 152.

In Walker v. Robbins the court said: "In cases of false returns affecting the defendant, where the plaintiff at law is not in default, redress can only be had in the court of law where the record was made, and if relief can not be had there, the party injured must seek his remedy against the marshal."

In that case there were three defendants in the suit at law, which was a suit on a bond; the marshal's return showed personal service on all three; one of the defendants employed a lawyer to defend for all; after that employment the one who afterwards claimed to have not been served, conferred, in company with his codefendant who had ·engaged the lawyer, with that lawyer about the character of the defense to be. made; the lawyer filed a joint plea for all the defendants and the suit was defended on the line of defense agreed upon in that conference; ten years after the judgment had been rendered the three defendants jointly filed a bill in equity to enjoin execution of the judgment on the ground that one of them had in fact not been served. The court said, "We are of the opinion, however, that the return was not false; but if it was, that Walker waived the want of notice by pleading to the action." What room was there under the facts of that case for the discussion of the question of equity jurisdiction with which we are now concerned?

In Knox County v. Harshman, the county of Knox filed a bill to enjoin Harshman from prosecuting a writ of mandamus to enforce a judgment he had obtained against the county on certain bonds; the bill proceeded

. on two grounds, first, that the allegations in the petition on which the judgment was founded were false, as to which the court said: "This ground is fully met and disposed of by the opinion delivered by Mr. Justice MATTHEWS in Harshman v. Knox County, 122 U. S. 306." The other ground relied on was that the county had no notice of the suit because the writ was not served on the county clerk; second, the county clerk neglected to notify the judges of the county court that the writ had been served on him. The court said that those were "hardly consistent suppositions." The court . then said that if the returns were false the petitioner's redress could only be sought at law, and referred to Walker v. Robbins, supra; then the court said: "But if the question of the truth of the return could be considered in this suit, the proofs given at the hearing clearly show that such service was in fact made. Any neglect of the clerk in communicating the fact to the county court was neglect of an agent of the county and did not affect the validity of the service or of the judgment."

Hunter v. Stoneburner, 92 Ill. 75, was a suit in equity to set aside a judgment in partition under which land in which plaintiff had an undivided interest had been sold. The partition suit was begun in 1851, when plaintiff was a minor; the sheriff's return showed that the minor had been duly served, a guardian *ad litem* had been appointed and filed an answer for him, the cause was tried, commissioners were appointed who reported that the land was not susceptible of partition, the decree was that it be sold, which was done, and the plaintiff in the partition suit became the purchaser; he sold to Hunter, who was an innocent purchaser for value. The suit in equity was to set aside the judgment and give the plaintiff his share of the land on two . grounds: first, that the decree of sale was procured by fraud on the part of the plaintiff in the partition suit; second, that the plaintiff had not been served with pro-

cess in the partition suit. This suit was begun in 1870. The court said that the record showed not the slightest evidence of fraud on the part of the plaintiff in the partition suit, but that even if fraud had been proven it "would not in the least affect appellant's title if he purchased in good faith without actual or constructive notice of the fraud."

On the point that the process had not been served, it does not very clearly appear from the report whether the complaint was that the return was insufficient on its face or untrue. The comments of the court rather indicate that the complaint was that the return was insufficient on its face. After construing the return and holding it sufficient the court said: "It, then, appearing that appellee was served with process, he must be bound by the officer's return. It is in rare cases only, that the return of the officer can be contradicted, except in a direct proceeding by suit against the officer for a false return."

The points that distinguish that case are, first, that except for the charge of fraud, as to which the court said there was not the slightest proof, there was no equity on the face of the bill; second, the rights of an innocent purchaser for value had intervened.

Cully v. Shirk, 131 Ind. 76, was a suit in equity to set aside a decree foreclosing a mortgage on the sole ground that the return of the sheriff on the summons was not true. The court said: "There is no claim that the defendants in the action of foreclosure had a meritorious defense, or that the proceedings were not proper and regular upon their face."

Tullis v. Brawley, 3 Minn. 277, was an action at law against the sheriff by a purchaser at the sheriff's sale to recover back money he had paid the sheriff on the ground that he got no title to the things the sheriff sold him. What is there said of the conclusiveness of the sheriff's return has no application to a case of equity jurisdiction.

Bolles v. Bowen, 45 N. H. 124, was also an action at law. The defendant attempted by a plea in abatement to contradict the truth of the sheriff's return in the very suit. A demurrer to the plea was sustained.

Rhode Island is placed in the list of States that are thought to hold that equity is without jurisdiction in such case, and is so classed because of the decision in Barrows v. Rubber Co., 13 R. I. 48. In that case the plaintiff had bought shares of stock in defendant corporation at sheriff's sale and brought this suit to compel defendant to disclose the number of shares that the defendant in the execution held and to transfer the same to plaintiff on the books of the corporation. Some question arose as to the sufficiency of the notice or advertisement of the sale, and what the court said in reference to the conclusiveness of the sheriff's return has reference only to the facts of that case.

The Rhode Island court, however, in a recent case has placed itself in the list of courts which hold that equity has jurisdiction in such case. Dowell v. Goodwin, 22 R. I. 287, was a suit in equity to enjoin an action on a judgment obtained against the plaintiff on a false return of service of summons. The bill alleged that the return was false, that plaintiff had a meritorious defense to the action, but did not make it because he was ignorant of the existence of the suit, and did not discover that suit had been brought until after the judgment had been rendered and after it was too late to interpose his defense. It was insisted on demurrer to the bill that the return of the officer was conclusive and previous decisions of the court were cited as sustaining that view, among them being Barrows v. Rubber Company. The court said (l. c. 290): "The cases cited hold that an officer's return is conclusive and can not be contradicted incidentally by motion or plea. Also, that the return is part of the record, and that parol evidence can not be submitted to contradict the court record; for so long as it remains it is con-

clusive upon the parties, and in order to change it some
appropriate proceeding acting directly upon the record
must be instituted. It is to be observed, however, that
the rule as thus laid down in the cases relied on applies
to common-law actions; see Pratt v. Jones, 22 Vt. 345;
Pettes v. Bank, 17 Vt. 444; and hence the question arises
whether it is also applicable to suits in equity.  .  .  .
To state the question more concisely, can a court of
equity ever interfere and grant relief by way of per-
mitting the record of a common-law court to be im-
peached as to the officer's return on the writ, or as to
any other part of the record? We think this question
must be answered in the affirmative. One of the pecu-
liar provinces of a court of equity is to relieve against
willful misrepresentation and fraud. A court of equity
is a court of conscience; and whatever, therefore, is
unconscionable is odious in its sight. Indeed it is said
by Judge STORY in his Commentaries that 'fraud is
even more odious than force.' That a judgment ob-
tained in a court of law by a false and fraudulent writ
or by a false and fraudulent return thereon by the
officer is so wholly unconscionable as to shock the in-
herent sense of justice of all right-thinking men, no
one will deny. And it would be a reproach to our sys-
tem of jurisprudence if a court of equity could afford
no relief against a judgment so obtained. But that
equity does afford a full and adequate remedy against
such a wrong, and that the case stated in the bill before
us is clearly within the jurisdiction of such a court, is
fully shown by the authorities, to some of which we will
proceed to refer.'' My apology for so lengthy a quota-
tion from that case is that that court is referred to in
some of the text-books as being on the other side of
that question. It should be noticed also that whilst the
court uses the words ''false and fraudulent'' it uses
them in that connection as synonymous. There was no
suggestion in the bill filed in that case that the plaintiff
in the suit at law had colluded with the officer to make

the false return; the plaintiff's case in equity was bottomed on the fact that the return was false. When a sheriff makes a false return, he either does so willfully, in which event he commits a fraud, or he does so by accident or mistake, and in either case it falls within the province of equity jurisdiction.

In Stewart v. Stewart, 27 W. Va. 167, the plaintiff was the wife of one of the defendants; she had obtained a decree for $2,500 alimony against him in Ohio; he owned land in Hancock county, West Virginia, and was living, so the bill said, in adultery with the other defendant in the adjoining county of Beaver in Pennsylvania; he had confessed a judgment in favor of his codefendant in Hancock county, and the object of this suit in equity was to give the plaintiff priority of her judgment of alimony in the Hancock county land over the confessed judgment in favor of the alleged paramour. The sheriff's return was that of personal service on both defendants; the man appeared and filed a demurrer to the bill, the woman did not appear; the demurrer was overruled, no further pleadings, a decree *pro confesso* was entered against both defendants, which was followed in due course by a final decree in the wife's favor. Some months after the final decree and sale of the land under it, the woman filed a petition in the same case alleging that the sheriff's return of personal service on her was false, that in fact the summons had been served on her at her home in Beaver county, Pennsylvania, which as she was advised was only constructive service. The court refused her petition holding that the sheriff's return as to her was conclusive. The woman did not pretend that she did not in fact have notice of the suit; on the contrary she set up in her petition that the summons had been served on her, but not in Hancock county as the return falsely stated, and that in legal contemplation the service on her was only constructive. That was not an independent suit in equity; it was a proceeding in the original

suit in which the decree sought to be set aside was rendered, under a statute of that State something like the provision in our Code of Civil Procedure for opening and reviewing judgments rendered by default on constructive notice. [Sec. 777, et seq., R. S. 1899.] The court in that decision did not discuss the question of equity jurisdiction, but only the question of the common law effect of the sheriff's return as between the parties in the same case, and all the cases cited by that court from Georgia, Indiana, Kansas, New York and Wisconsin are only to the same effect; none of them are on the point of equity jurisdiction.

In Goddard v. Harbour, 56 Kan. 744, the plaintiffs sought to set aside a judgment of foreclosure of a mortgage on the sole ground that the summons had not been served on one of the defendants and that, therefore, the court had no jurisdiction; that the sheriff's return as to that defendant was false. The sole question in that case was, could the sheriff's return be shown to be false for the purpose of showing that the court which rendered the judgment was without jurisdiction? There was no suggestion that the defendants in the suit to foreclose the mortgage had any defense to it, and no other equitable ground was offered.

In Taylor v. Lewis, 2 J. J. Marsh. 400, decided in 1826, Taylor had recovered a judgment against Lewis, while the latter was a minor, for board. Lewis filed his bill in chancery alleging that the amount had been paid before the suit was brought, that process had never been served upon him, although returned executed, in consequence of which he was prevented from making defense. On the trial the plaintiff offered no evidence to prove that the debt was paid, but rested his case on proof that the return was false; the trial court decreed that the injunction would be granted unless Taylor would consent to a new trial of the lawsuit, which he refused to do. The decree was reversed on appeal, the Supreme Court holding that the return was conclusive.

The court said that if there had been a showing that the plaintiff in the suit at law had fraudulently combined with the officer to make the false return there would be no doubt but that the chancery court could grant relief, but when the plaintiff acts in good faith and takes his judgment on the false return the judgment can not be disturbed.

That case is reported also in 19 Am. Dec. 135, and in an elaborate note by the editor the cases up to that time are reviewed and the doctrine of that case is condemned. It is there said: ''The rule stated in the principal case that a judgment can not be impeached in equity as fraudulent and void, when it appears that the officer, without combination with the plaintiff, has returned process as served on the defendant, when in fact the same never was served, can hardly be considered the prevailing rule at the present day. A few decisions are found affirming the same, but most of the modern authorities are opposed thereto.'' The law-writer then refers to Walker v. Robbins, 14 How. U. S. 584, and Johnson v. Jones, 2 Neb. 126, both of which are above discussed, and proceeds: ''It has never been questioned that one branch of the jurisdiction of courts of equity was to grant relief in cases of fraud, sometimes concurrent with and sometimes exclusive of other courts. [Story, Eq. Juris., sec. 184.] It would seem to be one of those self-evident axiomatic propositions that might be safely asserted, without fear of successful contradiction, that no greater fraud can possibly be perpetrated than to deprive a person of his property without giving him an opportunity to be heard in its defense. To do so, is repugnant to our sense of natural justice, opposed to the underlying principles of all free governments, deriving their authority from a written constitution, and is seldom, if ever, sanctioned, except where might, and not right, prevails. Yet, those authorities undoubtedly have that effect, for when it is asked, and that, too, of those marvels of wisdom and

guardian-angels of the rights of persons, courts of
equity, to relieve against the commission of such an out-
rage, fraud *per se,* it might be truthfully said, and to
prevent one man through the medium of courts of jus-
tice from confiscating the property of another, their
answer is, inasmuch as you have a cause of action
against the officer for making a false return, we will
deny you the relief sought, allow the Constitution to be
violated, and your property confiscated. Fortunately,
however, the authorities quoted have not been followed
in this country." The author then proceeds to discuss
the cases that hold that equity has jurisdiction in such
case.

Thomas v. Ireland, 88 Ky. 581, was a suit in equity
to set aside a judgment of foreclosure of a mortgage
on the ground that the return of personal service on
the plaintiff was false and was so made by collusion
between the sheriff and the plaintiff's husband to con-
ceal from her the fact that her land was in danger of
being sold to satisfy the mortgage debt which was his
and not hers. There was no suggestion that the plain-
tiff had any defense that she could have made in the
foreclosure suit, if she had had notice.

The court held that equity could give the plaintiff
no relief, citing Taylor v. Lewis, and saying that if the
plaintiff in the foreclosure suit had known when he
took his decree or judgment that the return was false
it would have been a fraud on his part and the judg-
ment would be set aside, but unless he knew it he was
an innocent party and the judgment would stand.

Those two Kentucky cases come as near sustaining
the contention that a court of equity can not grant
relief from a judgment obtained on a false return as
any that have come under our observation, and yet in
neither of those cases was there any effort to show
that the parties seeking to set aside the judgments had
any defense on the merits, or that there was anything
in their cases to appeal to the conscience of the chan-

cellor, except the bare fact of the false returns. Touching the arguments advanced in those opinions that when a plaintiff takes a judgment by default on a false return, he not having procured the false return to be made, and not knowing that it is false when he takes his judgment, he is an innocent party who has acted in good faith and should not be disturbed—I am inclined to say that its soundness depends on whether he has been put to any disadvantage by having taken his judgment. If to set his judgment aside simply places him where he was before he took it, with no vantage ground lost, he is in no position to excite our anxiety to protect him, and if after he has taken his judgment, he learns that the return was false and that his adversary was thereby deprived of the opportunity of making a defense to the suit, yet, after such information obtained, he holds on to his judgment and seeks to enforce it, I can not see that his conduct is less amenable to the charge of fraud than it would have been if he had discovered the fact before he took his judgment. If there is any difference, from a standpoint of good faith and honesty, between taking a judgment by default knowing the return to be false, and holding on to it after discovering the fact, I do not appreciate it.

In a later case the Kentucky court holds that equity has jurisdiction to enjoin a judgment obtained on a false return, and although in the opinion reference is made to a statute of that State, yet the court treats it as a principle of equity and defends it on the broad ground of right and justice. The court said: "But though a fine for misdemeanor may be imposed, just as a judgment for money may be rendered, without the defendant being present, yet it is indispensable to validity of both that the person against whom the charge is made or recovery is sought have notice of the proceeding against him, so he may deny and call for proof of the charge or of the legality of claim against him; and it is so plain as to be generally held that a judg-

ment rendered without such notice is, and ought to be, treated as absolutely void; and it is equally plain that the defendant in all cases should have the right to show that a judgment against him, whether rendered under an indictment or in a civil action, was, in fact, if it be so, rendered without legal notice; and, therefore, while, for obvious reasons, official return of a summons duly executed is presumed to be correct, and consequently sufficient to authorize a trial and judgment by the court, it would be equally against public policy, because unjust and oppressive, to deny the right of a defendant against whom a judgment has been rendered to show that the officer did not, in the mode required by law, actually summon him, and hence the statute authorizes it to be done when either the party benefited by the judgment has fraudulently procured return of service, or the officer has made it by mistake." [Bramlett v. McVey, 91 Ky. 151.]

Johnson v. Jones, 2 Neb. 126, was a suit in equity to declare a judgment void on the ground that the sheriff's return was false. It was a judgment on a promissory note and there was no suggestion of a meritorious defense; it was simply an appeal to equity to declare the judgment void on the alleged ground that the return was false. On the trial the evidence for the plaintiff broke down, and he confessed that he was mistaken when he testified that he was absent from the State at the date of the alleged service, which was the basis of his contradiction of the return, and the court said: "The case then stands without proof to contradict the return." The court then goes on to discuss the subject of the conclusiveness of the officer's return and concludes the discussion on that subject thus: "When the law invested the sheriff with authority to serve process and make return thereof, and he returns that he has served the process, his return can not be collaterally assailed."

But the Nebraska court in a later decision clearly

recognizes the jurisdiction of equity to set aside a judgment founded on a false return, when in addition to the falsity of the return the plaintiff shows that he has a meritorious defense.

In James v. Howell, 37 Neb. 320, which was a suit in equity to vacate a judgment on the ground that the return was false, the court said: "Whilst there is some conflict, the weight of authority undoubtedly is that a court of equity will not enjoin a judgment at law merely on the ground that the process in the suit in which the judgment was rendered was not served on the defendant, or, in other words, that the return of the officer as to service is, in fact, false. To justify the interposition of a court of equity in such a case it must be further shown that if the relief sought be granted, a different result will be obtained from that already adjudged by the judgment alleged to be void [Colson v. Leitch, 110 Ill. 504, and cases there cited; 3 Pomeroy, Equity Jurisprudence, sec. 154 and cases there cited]." The cause was remanded to be tried on that theory.

In reading these decisions of the various courts one is impressed with the fact that different courts view the subject and discuss it from different standpoints. When courts of equity were first appealed to, to grant relief from judgments wrongfully obtained at law, the jurisdiction was fiercely resisted by the common-law lawyers, who considered it as an assumption of authority over the law courts and an affront to their dignity and authority. But the cry of justice was so loud that it finally prevailed, and the defenders of the law courts were appeased with the assurance that courts of equity did not lay their hands on the courts of law or mutilate or impair their records, but, in a proper case, would lay their hands on the person who had obtained the unconscionable judgment and enjoin him from enforcing it. And it was in that form only that the jurisdiction of equity in such cases was manifested in earlier times, and whilst, in latter

days, the former jealousy between the courts having disappeared, courts of equity are not now so careful to avoid giving offense, and therefore sometimes give their decrees the form of annulling the judgment at law, yet that is a difference in form only, because between a decree perpetually enjoining the enforcement of a judgment and one declaring the judgment set aside and for naught held, there is no practical difference. Yet we still see in the opinions of some of the courts care to avoid impairing the authority of a court of law, and that appears in this Nebraska case in which the only point really decided is, that for the purpose of impeaching the jurisdiction of the law court, equity will not hear parol evidence to contradict the return on the summons on which that jurisdiction depends. But conceding that the law court apparently had jurisdiction, if in a subsequent suit facts are made to appear which render it unconscionable for the judgment to be enforced, which suit the law court is unable to hear, courts of equity will listen to the complaint and grant relief.

Maryland is classed as one of the States that hold that equity has no jurisdiction in such cases; this is on the authority of Gardner v. Jenkins, 14 Md. 58. The sole ground on which the relief in equity was sought in that case was that the plaintiff was a resident of Baltimore county, not Baltimore city, the summons was addressed to the sheriff of Baltimore city who served it on the plaintiff in the county outside of the city, against the plaintiff's remonstrance, and returned it as served in the city. The opinion in that case on this point is short, but so clearly states the law that we are tempted to quote it (l. c. 61) : "The bill admits that the complainant is indebted to the defendant, but it does not state the amount, *nor offer to pay it.* The case of Fowler v. Lee, 10 Gill. & Johnson 363, shows, to use its language, that 'courts of chancery do not lightly interfere with judgments at law. It is only for

the prevention of fraud, or to relieve from substantial injury or gross injustice, that its high and extraordinary power of interference by injunction is ever resorted to. It is never merely for the correction of informalities or irregularities in legal or judicial proceedings. He who seeks to avail himself of such defects, must prosecute his remedies at law; from a court of equity he can receive no countenance.' It may be said of the present complainant, as was said of the one in the case referred to, 'to obtain relief by injunction against this judgment he should, by his bill, have offered to do equity, by paying into court the debt which, by his own statement, he had shown himself in honor and in conscience under an obligation to pay.' "

Preston v. Kindrick, 94 Va. 760, was a suit in equity to set aside a decree to foreclose a vendor's lien. The land had been sold under the foreclosure decree, bought in by the plaintiff in the foreclosure suit, and by him sold to one Neff. This was in 1892. In 1895 Mrs. Kindrick filed her bill to set aside the decree under which the land was sold and to allow her to pay the purchase-money due thereon and for general relief. The ground upon which she based her suit in equity was that she had had no notice of the foreclosure suit or sale, that the return of service on her was false, and that the plaintiff in that suit and Neff to whom the land had been sold, had notice that she was ignorant of the suit and of the proceedings. On the trial Mrs. Kindrick testified that the summons was not served on her, but there was no proof taken to sustain the allegations of her bill that she had no actual knowledge of the suit, or of the proceedings thereunder, or that the plaintiff or the purchaser of the land knew that the return was false, or that she had no notice. This was a case in which the rights of a purchaser without notice had intervened. The case rested alone, so far as the proof went, on the point that the sheriff's return was not true. The court discussed the question whether an offi-

cer's return in such case could be questioned in a court of equity and after stating that there was a diversity of opinions on the subject concluded that the rule in that class of cases holding that the return could not be questioned was "perhaps the better doctrine." Then after referring to some cases, the chief of which were Walker v. Robbins, and Knox County v. Harshman, above discussed, concludes as follows: "But, even if it were held that, in order to obtain relief against the proceedings complained of, it was only necessary for Mrs. Kindrick to show that process was not served upon her, and that she did not have notice of the proceedings before the decrees complained of were entered, and that she has a meritorious defense, she has not made out her case. Although she alleges in her bill that she did not have actual notice of the suit and proceedings therein until after the decrees complained of were rendered, she has wholly failed to sustain it by proof."

The foregoing are all the decisions in our sister States which are thought to hold the view that there is no relief in equity from a judgment by default founded on a false return of service of the summons, which have been referred to in the briefs or which have come under my notice and if I have correctly understood them there is not one of them that denies the jurisdiction of a court of equity in a case like that which is now at bar calling for our judgment.

A study of those cases must bring us to the same conclusion as that expressed by a learned text-writer already above quoted (Black on Judgments), who after stating that a court of equity has jurisdiction in such case (vol. 1, sec. 376), says: "Although the general consensus of judicial opinion is as stated in the beginning of this section, the decisions in some of the States hold that equity ought not to restrain a judgment on the mere ground that it was void for want of jurisdiction, since the complainant has an adequate remedy at

law, by motion or otherwise, in the original cause.
Probably the true note of distinction is struck in the
cases which rule that equity will not enjoin the judg-
ment unless it is shown to be inequitable and unjust;
if the party merely relies upon a defect of jurisdiction,
without attempting to show that the merits are with
him also, he must seek his remedy at law.''

I have felt constrained to go through the foregoing
cases because they are the only decisions, so far as I
have been able to discover, that afford any ground for
questioning the jurisdiction of a court of equity on this
important subject, and if my analysis of them is right
they afford no authority to gainsay the principle of
equity jurisdiction laid down by this court in its opin-
ion on the first appeal in this case.

If we will now turn to the decisions to the contrary
in this country on this subject we will find that the only
difference in principle between any of them is, that
some hold that it is the duty of the court of equity to
grant relief from a judgment obtained without notice,
although no showing is made, by allegation in the plead-
ing or by proof, that the party had a meritorious de-
fense, basing their opinions on the ground that to
suffer such a judgment to go into execution is to take
one's property without due process of law, an act in
itself shocking to conscience, and in express violation
of the Constitution of perhaps every State in the Union,
while the others hold that a showing of a meritorious
defense is necessary to arouse a court of equity into
action.

They all treat the false return as offensive to the
equitable sense of right and justice, whether it was the
result of mistake or fraud, and in nearly all the decis-
ions the courts recognize the doctrine that the sher-
iff's return, like the judgment of the court itself, is con-
clusive on the parties to the record and can not be con-
tradicted in a collateral attack, but like the solemn

judgment of the court it may be assailed in a direct proceeding in equity, for fraud, accident or mistake.

I will not further strain patience by attempting to review those cases which hold that equity is all-powerful to grant such relief, but here is a list for reference for anyone who doubts it: Brooks v. Harrison, 2 Ala. 209; Crafts v. Dexter, 8 Ala. 767 (42 Am. Dec. 666); Stubbs v. Leavitt, 30 Ala. 352; Robinson v. Reid's Exr., 50 Ala. 69; Dunklin v. Wilson, 64 Ala. 162; Rice v. Tobias, 89 Ala. 214; Ryan v. Boyd, 33 Ark. 778; State v. Hill, 50 Ark. 458; San Juan & St. I. M. & S. Co. v. Finch, 6 Colo. 214; Gregory v. Ford, 14 Cal. 138 (s. c., 73 Am. Dec. 639); Martin v. Parsons, 49 Cal. 94; DuBois v. Clark, 12 Colo. App. 220; Wilson v. Hawthorne, 14 Colo. 530; Jeffery v. Fitch, 46 Conn. 601; Owens v. Ranstead, 22 Ill. 161; Hickey v. Stone, 60 Ill. 458; Weaver v. Poyer, 79 Ill. 417; Willman v. Willman, 57 Ind. 500; Harshey v. Blackmarr, 20 Iowa 161; Newcomb v. Dewey, 27 Iowa 381; Stone v. Skerry, 31 Iowa 582; Arnold v. Hawley, 67 Iowa 313; Ins. Co. v. Waterhouse, 78 Iowa 674; Chambers v. Bridge Manufactory, 16 Kan. 270; McNeill v. Edie, 24 Kan. 108; Bramlett v. McVey, 91 Ky. 151; Magin v. Lamb, 43 Minn. 80; Walker v. Gilbert, Freeman Ch. (Miss.) 85; Jones v. Bank, 5 How. (Miss.) 43 (s. c., 35 Am. Dec. 419); Crawford v. Redus, 54 Miss. 700; Sivley v. Summers, 57 Miss. 712; Duncan v. Gerdine, 59 Miss. 550; Hauswirth v. Sullivan, 6 Mont. 203; Wilson v. Shipman, 34 Neb. 573 (s. c., 33 Am. St. 660); Huntington v. Crouter, 33 Ore. 408 (s. c., 72 Am. St. 726); Miller v. Gorman, 38 Pa. St. 309; Dowell v. Goodwin, 22 R. I. 287; Caruthers v. Hartsfield, 3 Yerg. (Tenn.) 366; Estis v. Patton, Id. 382; Bell v. Williams, 1 Head (Tenn.) 229; Ingle v. McCurry, 1 Heisk. (Tenn.) 26; Ridgeway v. Bank, 11 Humph. (Tenn.) 525; Cooke v. Burnham, 32 Tex. 129; Smith v. Deweese, 41 Tex. 595; Glass v. Smith, 66 Tex. 548; Johnson v. Coleman, 23 Wis. 452 (s. c., 99 Am. Dec. 193).

Now let us see what position this court has heretofore taken on this subject. In numerous cases we have held that the officer's return is conclusive on the parties to the record, except in an action against him for a false return. The correctness of those decisions is not questioned. In Phillips v. Evans, 64 Mo. 17, the court, per SHERWOOD, J., said: "The return of the officer is conclusive as to the facts therein recited, except in an action for a false return [citing cases]. And the same reasons which would forbid any contradiction of the returns when made, must operate with equal and controlling potency in precluding evidence to show that a proposed amendment is untrue. The action of the court below, therefore, in the rejection of evidence in the particular mentioned, will be held correct. The foregoing remarks are, however, to be restricted to purely legal proceedings. For the arm of a court of equity is not too short to throttle a fraud, consummated, or contemplated, having for its basis either a return originally false or one to be made so by a proposed amendment, and this is the view taken elsewhere."

That decision bears on another point in this case and for that reason I will refer to it again.

McClanahan v. West, 100 Mo. 309, is relied on as holding that the truth of the sheriff's return can not be questioned in a direct suit in equity to set aside a judgment on the alleged ground that the return was false. I do not so understand that case. That was a suit in equity to set aside a decree in partition on the ground that the decree was void on its face for failure of the record to show service of process and also on the ground of fraud on the part of the plaintiff in the partition suit. There was no allegation that the sheriff's return was false; there was an allegation that the plaintiff, who was a minor nine years old when the partition suit was brought, was not served with a process, but that was based on the fact that there was nothing on the face of the record to show that she was served

with process; the decree did not recite that process was served, and the files were lost, so that the summons and the sheriff's return could not be seen. The decree complained of was rendered in 1854, and the suit to set it aside was begun in 1885, more than thirty years thereafter, and nearly, if not quite, twenty years after the minor became of age. She introduced evidence tending to show that no writ had been served on her, but that evidence was not offered to contradict a return, for her theory was that there was no return as to her, but it was to rebut the presumption of due service of process that would arise in the absence of the writ in support of the judgment of a court of general jurisdiction; it was, as bearing on that point, that this court considered the evidence, and in that connection, per Sherwood, J., said: "A domestic judgment, rendered by a court of general jurisdiction, can not be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired." The trial court had allowed the defendant to introduce parol evidence to prove the contents of the lost papers, including the summons and the sheriff's return, and this court held that whilst the plaintiff's parol evidence was inadmissible to impeach the decree, the defendant's parol evidence of the contents of the lost papers was admissible to show "that there was nothing in the lost files at variance with the presumptions incident to, and attendant on, the doings of a court of general jurisdiction."

Thus it appears that no issue was tendered in the petition as to the truth of the sheriff's return, and what was said in the opinion as to the admissibility of parol evidence had no reference to such an issue. To quote further from the opinion: "It is charged in the petition that the partition proceedings *are void on their face*. If this is true, *the plaintiffs have stated them-*

*selves out of court;* for in such case the remedy at law by action of ejectment would be adequate and ample.'' The court also refers to the fact that there was a guardian *ad litem* appointed for the minors who filed an answer for them, and that the record showed the receipt of the plaintiff after she came of age for her share of the proceeds of the sale in partition.

There is nothing in that case to justify the inference that the learned judge who wrote the opinion had in any degree changed his mind expressed in Phillips v. Evans as to the power of a court of equity to throttle fraud ''having for its basis either a return originally false or one to be made so by a proposed amendment.''

Those are the only cases in which this court has spoken on this subject as affecting equity jurisdiction, but there are other cases in which we have spoken with such emphasis that it would be difficult to say that a party against whom a judgment has been rendered without notice in fact cannot at law, as well as in equity, every where and in any manner, contradict the false return to show that the court which rendered the judgment had no jurisdiction of the person. In Hunt v. Searcy, 167 Mo. 158, those decisions of this court as well as decisions of the Supreme Court of the United States are reviewed by MARSHALL, J., speaking for the court, and quoting with approval what the Supreme Court of the United States said in reference to that clause of the fourteenth amendment to the Federal Constitution prohibiting a State to deprive one of life, liberty or property without due process of law: ''These prohibitions extend to all acts of the State, whether to its legislative, its executive, or its judicial authorities. . . . No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party,'' and applying the law to the case then in hand the learned judge said that the statute which seemed to authorize an inquiry of lunacy

without notice to the alleged lunatic, was in violation of both the State and Federal Constitutions.

The facts of the case at bar do not require us to either say or imply that the long established rule that in an action at law as between the parties to the suit and their privies, the return of the sheriff on the original process is conclusive and can not be contradicted, should be departed from, and I do not so say or imply, but following the same line of argument we followed in the case last cited, some courts, as will be seen by reference to the cases above cited, have been unable to resist that conclusion. But without departing from the rule and without impairing in any degree the confidence that should be encouraged in the integrity and stability of judicial proceedings, we ought to hold that a party against whom a judgment by default has been rendered on a cause of action against which he had a meritorious defense, which he was unable to interpose because he had no notice of the suit, although the sheriff's return falsely showed due service of the process on him, may have relief in equity from such judgment upon such equitable terms as will not injure an innocent third party; and with this I leave that subject.

## II.

Does the evidence sustain the allegations of the plaintiff's petition?

1. Did she have a meritorious defense? She signed the note with her husband as surety for money which he borrowed—for a debt that was his, not hers— she was then a married woman and the law then was that a married woman could not bind herself by such a contract and the note imposed on her no legal obligation. The fact that at the time she signed the note she was a married woman, was a complete bar to a judgment against her in the suit in which the judgment in question was rendered. Was that a meritorious defense? In 20 Am. and Eng. Ency. Law (2 Ed.), 607,

it is said: "The term 'merits' has been defined as meaning the strict legal rights of the parties as distinguished from those mere questions of practice which every court regulates for itself and from all matters which depend upon the discretion or favor of the court; matters of substance in law, as distinguished from matters of form." Another harvester of the law puts it thus: "Merits signify the legal rights of the parties as distinguished from questions of practice and discretion." [1 Ency. Pl. and Pr., 339.] That which the law itself declares to be a meritorious defense, courts established to administer justice according to the law have no right to say is not meritorious; the law erects the standard and courts do well if they measure up to it.

2. It appears that some time before she brought this suit the plaintiff brought suit against the sheriff for damages occasioned by the false return and that the tribunal to which she then applied for justice found the issues in her favor and awarded her one cent for her compensation. It is now insisted that she made her election of remedies and must abide by her choice.

The doctrine of election of remedies has its origin in the law of estoppel, although to charge a party with the consequences of his election it is not necessary that all the essentials of an estoppel appear. In Bigelow on Estoppel (5 Ed.), p. 673, it is said: "A party can not in the course of litigation or in dealings *in pais* occupy inconsistent positions. Upon that rule election is founded; 'a man shall not be allowed,' in the language of the Scotch law, 'to approbate and reprobate.' " The doctrine applies where a party has two remedies based on inconsistent theories. If the plaintiff's personal property has been unlawfully taken he may sue for its possession, or he may waive the tort and elect to recover its value as upon an implied agreement. But if he still claims the property he can not recover its value on an *indebitatus assumpsit,* and on the other hand if he elects to imply an agreement on the part of the de-

fendant to pay him what the goods were worth he can not have the goods.   [7 Ency. Pl. and Pr. (2 Ed.), 361, et seq.]

The author just cited, in a note to the text at page 363, says: "That the inconsistency of the remedies at the choice of the suitor is the essential condition of every application of the doctrine of election, is the teaching more or less direct and explicit of every case by which it is illustrated." And in the text the author in the same connection says: "As regards what have been termed consistent remedies, the suitor may, without let or hindrance from any rule of law, use one or all in a given case.   He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final, and if not satisfied with the result of that, he may commence and carry through the prosecution of the other."

The respondents in the case at bar seem to take the position that the plaintiff had no choice but to sue the sheriff, and then rather inconsistently they say that having chosen that course she is estopped from recovering her property from those whom she alleges have wrongfully taken it.

There is no inconsistency in the theory of the plaintiff's suit against the sheriff, and that on which this suit is founded; in both suits, she declares that she has been wronged, and in neither does she waive the wrong and elect to treat the transaction as a transfer of her property.

In the brief of one of the counsel we are informed that the theory on which the court, which tried the suit against the sheriff, based its judgment of one cent was, that if the return was false the judgment founded on it was void, and, therefore, did not deprive the plaintiff of any of her rights.   If that was the theory, whether erroneous or not, it accounts for the otherwise unaccountable judgment for one cent.   We gather from the brief of counsel on the other side that the theory

was that although the return was false, yet, she was really served in another manner, and had notice, and, therefore, she was not injured. But if the law court shut its door against her on that theory, surely there ought to be some court, under the sun, which would give her a hearing on the question of whether or not she, in fact, had notice.

Under these circumstances when she turns at last to a court of equity and prays that her property, of which she has, by this means, been deprived, be returned to her, what excuse can a court of equity give for its existence if it can grant her no relief and if it must turn her away telling her that because of her judgment for one cent there is no power in equity to redress her wrong?

I do not think that the plaintiff is estopped by her judgment for one cent against the sheriff from prosecuting her suit in equity to recover her property.

3. On the former appeal the cause was remanded to the circuit court with leave to the defendants, if they should see fit to do so, to amend their answer to tender the issue that the plaintiff was in fact served, though in a different manner from that shown in the return, or that she in fact had notice. After the cause went back to the circuit court, the former sheriff went into court and filed a motion in the original suit of Judd v. Smoot, for leave to amend his return so as to show that he served the writ by leaving a copy for Mrs. Smoot with a member of her family at her usual place of abode, and the court allowed him to make the amendment. Mrs. Smoot was notified that the motion would be made, and she appeared and resisted it, and appealed from the order allowing the amendment, but the Kansas City Court of Appeals affirmed the ruling of the circuit court.

It is now insisted that that proceeding is to be taken as conclusive in this equity suit of the question of fact.

Section 670, Revised Statutes 1899, authorizes a sheriff, with leave of court, to amend his return "in matters of form," as well after as before judgment. This is frequently necessary to sustain the integrity of the record, for if the return on its face is insufficient to show that the court had jurisdiction, the record would impeach itself. The amendment is made on the motion of the sheriff and at the discretion of the court.

The defendant cannot at that stage introduce evidence to contradict the proposed return any more than he could in that case introduce evidence to contradict the original return. If the sheriff who is the responsible officer makes such a showing as will satisfy the court that he ought to be allowed to amend his return the court will allow it, but the return as amended is still the act of the sheriff only, as much so as the original, and is as much beyond contradiction in that proceeding as was the original. The Kansas City Court of Appeals in that case said that in allowing the return to be amended the court did not abuse its discretion. [Judd v. Smoot, 93 Mo. App. 289.]

In Phillips v. Evans, 64 Mo. 17, hereinabove referred to on another point, the defendants in a judgment rendered against them by default moved to quash an execution that had issued on the judgment, one of the reasons assigned being that the service was not sufficient to give the court jurisdiction of the defendants. The original return was that the writ had been left at the usual place of abode of one of the defendants with a member of his family over fifteen years of age. The defect pointed out was that the return omitted to say that the member of the family with whom the return was left was a white person. On the hearing of the motion to quash the execution, the plaintiff asked leave of the court for the sheriff to amend the return by inserting the words "white person." The defendants objected on the ground that it would aid a false return, and offered evidence to prove that the

defendant named never had a place of abode in that county, but the court refused to hear the evidence and on appeal this court said: "And the same reasons which would forbid any contradiction of the returns when made, must operate with equal and controlling potency in precluding evidence to show that a proposed amendment is untrue. The action of the court below, therefore, in the rejection of evidence in the particular mentioned, will be held correct." That is unquestionably the law. Therefore, when Mrs. Smoot was before the court objecting to the amendment, she had no right to offer any evidence that would tend to show that the proposed amendment would be false any more than she could in that case have been heard to say that the original return was false, yet that proceeding is now claimed to settle this controversy, and take away from the equity court which had already assumed jurisdiction of the case the right to try the question of fact, did this woman have notice of the suit? The amended return ranks no higher than the original, and if false in fact is not beyond the reach of the chancellor.

4. It is also claimed that the purchasers of the plaintiff's land at the partition suit are innocent purchasers.

When the case was here on the former appeal we pointed to previous decisions to show that the purchaser at the partition sale took only such title as the parties to the partition suit had. But in addition to that the evidence shows that these purchasers had actual notice of the claim of this plaintiff.

The accuracy of a statement in the opinion in division is challenged, which is to the effect that in the answer which she tried to file in the partition suit, "she endeavored to assert the invalidity of the judgment and sale under execution upon the same grounds she now assails them." That language was intended to express the legal effect of the answer that it was

attempted to file. In the partition suit the petition stated that Judd "by good and sufficient deeds of conveyance purchased the interest of Ella G. Smoot," while in the answer she tried to file she "denied that the plaintiff, or any person for him, ever purchased her interest in said premises by good and sufficient deeds or by any deed whatever." The attorneys for Judd in the partition suit were his attorneys in the original suit. They had conducted the sale under the execution and they knew what they meant when they said he had acquired her title "by good and sufficient deeds," and they knew what she meant when she returned them her denial in their own words. Her answer was stricken out on Judd's motion, filed by the same attorneys, on the ground, among others, that she could not litigate her rights in that suit and the judgment therein would not preclude her.

5. It is said, however, that her debt to Judd is now paid with the proceeds of her land at the partition sale, and if she is allowed to recover back her land, nobody is left to suffer except the purchasers at the partition sale. But she owed no debt to Judd; it was her husband's debt, and not hers. Judd could not lawfully have taken her property for it, and if these defendants, chargeable as they are with knowledge that she claimed title to the land, chose to buy it in defiance of her claim, they voluntarily took the risk and there is nothing inequitable in requiring them to restore to the plaintiff her own. But under this point be it said, that a court of equity, whilst not omnipotent, is yet the most ample power in the judiciary to do justice between the parties, and so if the chancellor saw in the circumstances of the case anything to justify it, he might in ordering the account of rents and profits make some allowance on that source, he may restore her her property on such terms as good conscience and fair justice demands, but he cannot shut the door of his court in her face and refuse her prayer altogether.

6.   The evidence shows that a day or two before the sale of the land under execution on the original judgment Mrs. Smoot, in company with her husband, sought the advice of a lawyer, and the result was that an agreement was made between the lawyer so consulted and the attorneys for Mr. Judd by which he agreed to give her twelve months after the sale in which to redeem. The attorney stated that the agreement was in writing and he thinks he gave it to the plaintiff's husband. Just what that agreement was, whether it was supported by any consideration, or was binding on any one, or who signed it, or whether Mrs. Smoot ever saw it, the evidence does not show. It is impossible in the absence of the agreement and with the meagre showing of its contents to pronounce judgment on its legal effect; we must, therefore, be content with the facts we have. The facts are that Mr. Judd bought the land at the sheriff's sale, waited a year or more, and then brought the partition suit, and resisted the application of Mrs. Smoot to be made a party to that suit, caused her answer to be struck out on his motion on the grounds that her title could not be litigated in that suit, and: "Because said Ella C. Smoot has ample remedy, and is fully protected, if any rights she has, which will not be affected by the proceedings in this case." The sheriff sold the land under the partition decree in September, 1894. The present suit was instituted in August, 1895, a little less than one year after the sale in partition. It is now said that she has slept too long on her rights. There is nothing to show that anybody has been misled to his disadvantage by her delay, or that the rights of any third person have intervened. In the meantime she had the battle with the sheriff on her hands, and after the law courts turned her out with a judgment for one cent damages, she brought this suit. There is nothing in these facts which would justify us in saying that this woman was guilty of laches.

7.   The last question in the case is, does the evidence sustain the plea that the plaintiff had notice of the suit? This is the question of fact for the trial of which we remanded the cause on the former appeal. The evidence on this question is discussed in the opinion in division and I do not care to here repeat it.

It is now said, however, that when it comes down to the testimony of the ex-sheriff on the one hand and the plaintiff's husband on the other, the ex-sheriff is entitled to greater credibility because he is, or was, an officer of the law, and the presumption that the officer did his duty must be weighed in his favor, and cases are cited to sustain that proposition. The cases cited, however, do not refer to the evidence of the officer whose original return is confessed to be false, and who is seeking ten years afterwards to prove that notice of the suit was given in some other way. Nothing in the opinion in division reflects on the integrity of the officer, but he is considered as possessing the ordinary fallibility of memory that belongs to all of us.

It is also said that deference ought to be paid to the finding of the chancellor who had the witnesses before him and was better able to judge between them. We do observe deference towards the finding of a chancellor based on the conflicting testimony of witnesses in his presence; but in this case the finding seems to be based on an erroneous view of the law.

In the brief of the counsel for defendants we are favored with the written opinion of the learned chancellor in deciding the case and from it I gather that whilst he gave due consideration to the oral testimony, yet he gave to the amended return the weight of almost, if not quite, conclusive evidence, saying: "If the evidence is such as to justify the court in permitting the sheriff to amend his return, it would be such as to authorize a finding for the plaintiff." And the opinion also expresses the view that the proceedings in the

court which resulted in permitting the ex-sheriff to amend his return made the fact of service *res adjudicata*.

In that view the learned chancellor failed to notice the difference between the effect to be given the return, as an integral part of the record, in case the judgment should be attacked collaterally, and the effect to be given it when the judgment is assailed in a direct proceeding in equity.

If a judgment is rendered on default the sheriff's return is a vital part of the record in such case, for it shows on its face either that the court did, or that it did not, have jurisdiction of the person against whom the judgment is rendered. If (as in McClanahan v. West above referred to) the papers are lost and the return cannot be seen, we fall back on the presumption of regularity in the proceedings of a court of general jurisdiction, and on that presumption the integrity of the judgment is preserved. But if the writ and the return are on file, the judgment, in a collateral attack on that point, will stand or fall by what the return shows.

Though the judgment by default should itself recite that the process was served, yet, if the return shows that it was not served, the record impeaches itself and the judgment is open to a collateral attack. But if the return shows due service, then the judgment on its face is valid, and the truth of the return cannot be questioned in a legal proceeding except in a suit for damages against the sheriff. When the validity of the judgment is challenged on the face of its own record, the office of the return is to show that the court did, or that it did not, have jurisdiction of the person of the defendant, and the office of the amendment of the return is the same, and, while that record stands, neither the original nor the amended return can be contradicted by the parties to it.

And since, as was decided in Phillips v. Evans

above referred to, when the sheriff moves for leave to amend his return, a party to the suit cannot, in opposition to the motion, introduce evidence to show that the return as proposed to be amended would be false, the ruling of the court in allowing the sheriff to make the amendment can not give it the character of *res adjudicata*. The amendment simply substitutes the amended for the original return. But as the sheriff by his original return could not shut the parties out of a court of equity, neither can he do so by his amended return.

For the reasons above given I think the judgment ought to be reversed and the cause remanded to the circuit court with directions to enter a decree for the plaintiff, as directed in the opinion in division.

### SEPARATE CONCURRING OPINION.

FOX, J.—The record in this cause presents a number of questions for our consideration. However, there is one disclosed which is most vital and overshadows all other propositions involved, and its correct solution ends this controversy.

This proposition may be thus stated: On the one hand it is insisted that the sheriff's return of process is conclusive upon all the parties to the action, and the only remedy afforded the party injured, as a result of such false return, is against the sheriff and his sureties upon his bond, unless the plaintiff had knowledge of such false return, or in some way participated in the fraud perpetrated by the officer; in that event, equity will furnish a remedy. On the other hand, it is insisted with equal earnestness that equity will assume jurisdiction and afford a remedy, in all cases where it is made to appear that the party to the action had a meritorious defense, and that the judgment was rendered upon a false return of service of process by the officer; and it is urged that this is the correct rule, even though the plaintiff and his privies were absolutely ignorant

Vol 184 mo—40

of the falsity of the return, and in no way participated in the procuring of such return, or the fraud resulting from the making of it.

An able and exhaustive analysis of all the authorities bearing upon this question has been made by two of the learned and esteemed judges of this court, and the views expressed and conclusions reached are so sharply and pointedly in conflict, I trust it will not be deemed inappropriate to briefly give some expression to my views in concurring in the affirmance of the judgment in this cause. While the correctness or incorrectness of the analysis of the decisions of the courts in other jurisdictions may materially aid us in reaching a correct conclusion, it by no means solves the proposition confronting us; nor would my concurrence with either of the learned judges in the analysis of the cases be a solution of the legal problem. We are still confronted with a wide divergence in the views of learned judges and courts of high standing; hence, we must, at last, find a solution of this important question after careful and full consideration by adhering to the safer and wiser rule, and one that would best comport with equity and good conscience, and from which the least injustice would result.

In this State, in law cases, from a very early period in the history of this court, it was ruled that the return of service of process by the sheriff was conclusive upon the parties to the action, and it is somewhat significant that in nearly all the cases, from Hallowell v. Page, 24 Mo. 590, to Feurt v. Caster, 174 Mo. 297, it was expressly pointed out that the remedy of the party injured by reason of the false return, was against the sheriff upon his bond. With the exception of McClanahan v. West, 100 Mo. 309, the case at bar is the only one that has ever reached this court involving the proposition now before us; it might be said that the uniform expression of this court, indicating the remedy against the sheriff upon his bond, was construed by the

profession as the only one, hence the absence from this court of suits in equity involving the proposition might be to some extent accounted for. However, we will say that the absence from this court during its entire history of equity suits involving the question now being discussed, would not justify the conclusion that the profession of this State recognized the correctness of the doctrine that the sheriff's return in the original case was conclusive upon the parties in an action in equity to set aside a judgment for the reason that the return was false. This is merely referred to as a part of the history of litigation of this character.

In McClanahan v. West, supra, while it was not expressly alleged in the petition that the return of process upon one of the defendants in the original case was false, it was alleged that the decree in the original case was fraudulent and void, and there is no escaping the conclusion that plaintiffs, upon the allegations in the petition, offered parol evidence to show that Nancy, one of the defendants in the original case, was not served with process, and it was ruled that this testimony was inadmissible. There was no objection urged to this testimony that there was no allegation in the petition upon which to predicate it, or that the allegation that "the decree was fraudulent and void" was too general to admit of the testimony; but doubtless it was offered under such general allegation, and the announcement of the conclusions by the learned judge indicates very clearly the ground upon which he based his reasons for the ruling. Here is what was said in that case: "But it is unnecessary to rule the point now, for the obvious reason that there is no tendency in the testimony adduced by plaintiffs to show fraud in the proceeding or concoction of the judgment, nor of any connection of the defendants therewith. This being the case, parol testimony was wholly out of place to show that plaintiff Nancy had not been served with pro-

cess in the partition suit. And this is true notwithstanding that the judgment in that suit is silent as to the acquisition of jurisdiction by service of process upon her. A domestic judgment, rendered by a court of general jurisdiction, cannot be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired.'' [L. c. 320.]

It is apparent from that case that the parties were proceeding on the theory that they could show that Nancy was not served with process, for the reason that the record was silent upon the subject of acquiring jurisdiction of the person, by due service of process. But that by no means tends to lessen the force of the rule announced; it but emphasizes it, for it was there held that the judgment being one rendered by a court of general jurisdiction, even in the absence of any evidence of due service of process, other than that imported by the judgment itself, was equally conclusive on the parties thereto, whether it recites or fails to recite that jurisdiction has been acquired.

It thus follows that this court has spoken upon the subject now under consideration. It is apparent that the doctrine announced in that case cannot stand, if we now adopt the rule that the sheriff's return of service of process in the original case is not conclusive in an action in equity, to set aside the judgment upon the ground of the falsity of such return.

It must be conceded that to limit the remedy of a party to his or her action against the sheriff upon his bond, may, in some instances, entail hardship. It may be said that it is grossly inequitable, where the sheriff and his bondsmen are insolvent and unable to respond in damages for injuries resulting from a false return, to deny the remedy in equity; but would it not be more so to adopt a rule which permitted a recovery for the

perpetration of a fraud in the nature of a false return, from a party who not only did not in any manner participate in the fraud, but who was absolutely ignorant of the falsity of the return? Officers authorized to execute process are required to execute bonds for the faithful performance of their duties. Where they make false returns the parties injured have a remedy. If the sheriff or his bondsmen are insolvent and unable to respond in damages, the hardship is not the result of the failure of the law to provide a remedy, or the application of the doctrine that the return of the officer is conclusive.

Where the officer makes a false return and the party plaintiff has knowledge of it, or in any way participates in the perpetration of the fraud, courts of equity will assume jurisdiction and afford relief, for the reason that that would be deemed fraud in the concoction of the judgment. On the other hand, if an officer makes a false return and the plaintiff does not participate in any way in such fraud, and is ignorant of the falsity of the return, then, in my opinion the safer rule is, that the return of the officer should be treated as conclusive, not only in law cases, but as well in proceedings in equity to set aside a judgment on the ground of such false return. The parties seeking such relief in courts of equity should not be permitted to contradict the return of the officer in the original case; but should be required to seek their remedy against the sheriff and those who stand for his official conduct, his sureties.

That the authorities are conflicting upon this proposition, there can be no dispute; that was doubtless ascertained by WAGNER, J., in Stewart v. Stringer, 41 Mo. l. c. 404, where he says: "The courts of some of the States have held that a sheriff's return is *merely prima facie* evidence of the facts therein stated; but the law is firmly settled in this State, that a defendant cannot controvert the truth of the sheriff's return. If

the return of a sheriff to a process is regular on its face, it is conclusive upon the parties to the suit, and the remedy for the party injured is an action against the sheriff for a false return.''

The unvarying rule of the common law is that the return of the officer is conclusive and has been followed by many courts of this country of high standing. I shall not undertake to discuss or point out upon which side of this proposition the weight of authority rests. I must be content with giving expression to my conclusions, which are predicated upon that line of authorities which, in my humble judgment, furnishes the most satisfactory reason for the adoption of the rule.

To adopt the rule that courts of equity, upon the showing of a meritorious defense and a false return of service of process by the officer, would set aside judgments and sales of property made under them, notwithstanding all the parties to the judgment are innocent of participating in any fraud in procuring it, would materially lessen the value and force of such judgments, and the purchaser of property under such judgments, regular though they may appear in every detail, would be left in doubt as to the nature of his title, which uncertainty would continue to surround his title until relieved by the expiration of the statutory period of limitation in which the judgment debtor could institute his suit in equity to annul the judgment and set aside the sale made under it. Many land titles are based upon execution and partition sales in pursuance of judgments and decrees by default, and the injurious effects of the adoption of the rule indicated upon sales of that character are apparent. It would materially lessen the value of property, interfering with its ready sale, and introduce an entirely new feature for the consideration of title examiners, who are so often applied to for guaranty of titles.

While, I repeat, isolated instances of hardship and injustice may result from the adherence to the doctrine

Smoot v. Judd.

that the sheriff's return, regular upon its face, is conclusive upon the parties to the action, both in law cases and in equity, where it is sought to annul proceedings upon the sole ground of a meritorious defense and a false return; I am convinced that far more injurious results would follow the thrust at the integrity of judgments of courts of law by the adoption of the opposite rule.

Upon the other propositions involved in this controversy, it will suffice to say that from the disclosures of the record in this cause, the plaintiff had her day in court in the suit against the sheriff for making a false return. She pursued the remedy provided by law, and that must be treated as a full satisfaction and compensation for the damages sustained by reason of the false return. The fact that she was only awarded nominal damages cannot lessen the force or correctness of the legal proposition, and any injustice done her in that case, if any was done, should not be attributed to the failure of the law to furnish a remedy for the injuries resulting from such false return.

The judgment in this case, upon the facts disclosed by the record before us, is in harmony with equity and good conscience, and without expressing an opinion upon the correctness or incorrectness of the analysis of the authorities bearing upon this subject, made by each of the learned judges, I concur in the conclusions of MARSHALL, J., upon all the propositions involved in this cause, and the judgment of the trial court should be affirmed. *Gantt, J.,* concurs in the views herein expressed.